UNITED STATES of America,
Plaintiff–Appellee,

v.

Carlos FLORES–URIBE, Defendant–
Appellant.

No. 96–30156.

United States Court of Appeals,
Ninth Circuit.

Submitted Feb. 7, 1997.*

Decided Feb. 18, 1997.

---

* The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App. P. 34(a); 9th Cir. R. 34–4.

Rich Curtner, Federal Defender, Anchorage, Alaska, for defendant-appellant.

Julia Josephine Stiller, United States Department of Justice, Washington, DC, for plaintiff-appellee.

Before: BROWNING, RYMER, and T.G. NELSON, Circuit Judges.

RYMER, Circuit Judge:

Following his conviction for unlawful reentry of an alien previously deported based on a conviction for an aggravated felony in violation of 8 U.S.C. §§ 1326(a) and (b)(2), Carlos Flores–Uribe asked the district court to issue a judicial order of deportation pursuant to the Immigration and Nationality Technical Corrections Act of 1994, 8 U.S.C. § 1252a(d)(1), and to depart downward from the guidelines on that basis pursuant to U.S.S.G. § 5K2.0. The district court ruled that it lacked authority to order deportation because § 1252a(d)(1) is triggered only when such an order is requested by the United States Attorney with the concurrence of the

INS Commissioner, and that a § 5K2.0 departure was unwarranted. We agree with the district court's interpretation, and affirm Flores–Uribe's sentence.

I

On December 1, 1990 the INS granted Flores–Uribe lawful permanent resident status. In 1993, he was convicted in California state court of possession of cocaine for sale, and was deported to Mexico based on his conviction for an aggravated felony. Flores–Uribe reentered the United States in February 1994, but was convicted the following year in Alaska for misconduct involving a controlled substance in violation of Alaska state law. He was then charged federally with unlawful reentry by an alien convicted of an aggravated felony in violation of 8 U.S.C. § 1326(a) and (b)(2); Flores–Uribe pleaded guilty to that charge February 16, 1996.

The Presentence Investigation Report set Flores–Uribe's base offense level at eight, increased by 16 points pursuant to U.S.S.G. § 2L1.2(b)(2) for his prior deportation following a conviction for an aggravated felony. Flores–Uribe's criminal history calculation put him in category IV, resulting in a guideline imprisonment range of 57 to 71 months.

Flores–Uribe requested an eight-level downward departure from the 16 point enhancement imposed under § 2L1.2(b)(2) because his offense level and criminal history were overstated in light of the minor nature of the California drug offense. He also asked the district court to enter a judicial order of deportation at sentencing pursuant to 8 U.S.C. § 1252a(d), based on his "Stipulation to Deport." On account of his stipulating to a judicial order of deportation, Flores–Uribe argued that he was entitled to a four-level downward departure under U.S.S.G. § 5K2.0.

The district court held that it lacked authority to issue a deportation order absent a request from the United States Attorney, and that it would not depart downward based on Flores–Uribe's agreement to such an order. The court found that Flores–Uribe's conviction did result in an over-representa-

tion of his criminal history, and therefore departed pursuant to U.S.S.G. § 4A1.3 from criminal history category IV to category II. This reduced Flores–Uribe's sentencing range from 57–71 months to 41–51 months. However, the court found that no further departure was indicated, and sentenced Flores–Uribe to 41 months.

## II

■ Flores–Uribe argues that the district court has authority to enter a judicial order of deportation at sentencing, and to depart downward from the sentencing guideline based on a defendant's facilitation of deportation proceedings. He reasons that whether or not the government concurs, he should have the opportunity to request a judicial order of deportation as long as that request is knowingly made and any potential challenges to deportation are intelligently waived.

■ The statute upon which Flores–Uribe relies, 8 U.S.C. § 1252a(d)(1),[1] is plainly to the contrary. At the time of his sentencing, it provided:

> Notwithstanding any other provision of this chapter, a United States district court shall have jurisdiction to enter a judicial order of deportation at the time of sentencing against an alien whose criminal conviction causes such alien to be deportable under section 1251(a)(2)(A) of this title, if such an order has been requested by the United States Attorney with the concurrence of the Commissioner and if the court chooses to exercise such jurisdiction.

Thus, on its face, § 1252a(d)(1) permits a district court to enter a judicial order of deportation only at the request of the United States Attorney, with the concurrence of the Commissioner of Immigration and Naturalization. Unless the United States Attorney initiates the request (and the INS Commissioner agrees), the district court lacks power to enter a judicial order of deportation at sentencing. Because "[a] federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears," *Stock West, Inc. v. Confederated Tribes of the Colville Reservation,* 873 F.2d 1221, 1225 (9th Cir.1989), jurisdiction cannot be conferred by a request initiated by the alien. Flores–Uribe's request, and "Stipulation to Deport," therefore had no effect and could not trigger the district court's limited authority under § 1252a(d)(1) to order deportation.

While we have not considered this question before, other circuits that have had occasion to comment on the statute in the course of interpreting a district court's authority to deport a defendant-alien as a condition of supervised release pursuant to 18 U.S.C. § 3583(d) have read § 1252a(d)(1) as we do. *See, e.g., United States v. Chukwura,* 101 F.3d 230, 231 n. 3 (2d Cir.1996) (§ 1252a(d) gives district court circumscribed authority to deport but requires courts to obtain consent of United States Attorney and Commissioner before doing so); *United States v. Oboh,* 92 F.3d 1082, 1087 & n. 7 (11th Cir. 1996) (en banc) (Executive Branch can now effectuate deportation of a defendant subject to deportation through judicial rather than administrative proceeding if government requests it and meets procedural requirements of § 1252a(d)(2)); *United States v. Phommachanh,* 91 F.3d 1383, 1387 n. 2 (10th Cir.1996) (§ 1252a(d) does not apply because the United States Attorney did not request the order of deportation); *United States v. Xiang,* 77 F.3d 771, 773 (4th Cir.1996) (noting that § 1252a(d) is the only exception to Executive Branch's plenary power to deport aliens, but that even in this limited instance, Congress included requirement that the Attorney General must request the defendant's deportation and the Commissioner must concur); *United States v. Quaye,* 57 F.3d 447, 450 (5th Cir.1995) (§ 1252a(d) inapplicable because United States Attorney did not make request for deportation order). In addition, the natural reading of § 1252a(d)(1) comports with the settled national policy of entrusting immigration and deportation decisions to Con-

---

1. This section was redesignated 8 U.S.C. § 1252a(c)(1) by Pub.L. No. 104–208, 110 Stat. 3009 (1996). The 1996 amendment also replaced the words "whose criminal conviction causes such alien to be deportable under section 1251(a)(2)(A) of this title" with the words "who is deportable."

gress and the Executive Branch in the first instance and limiting the role of the courts. *See* U.S. Const. art. I, § 8, cl. 4. We therefore hold that the district court lacked jurisdiction under § 1252a(d)(1) to order Flores–Uribe's deportation absent a request by the United States Attorney with the concurrence of the Commissioner.

██ Flores–Uribe argues that regardless, the district court did not lack authority to depart under U.S.S.G. § 5K2.0 in recognition of his substantial and timely facilitation of the important governmental function of deportation, a fact not contemplated by the Sentencing Guidelines. In the same way that U.S.S.G. § 5K2.7 allows for an upward departure when a defendant significantly disrupts a governmental function, Flores–Uribe maintains that the court should have the authority to depart downward when a defendant significantly facilitates the deportation process. However, Flores–Uribe's "Stipulation to Deport" had no practical or legal effect since the district court lacked jurisdiction to enter a deportation order. Therefore the court had no basis for a § 5K2.0 departure, and properly concluded that none was warranted.

### III

██ Relying on *United States v. Cuevas–Gomez,* 61 F.3d 749 (9th Cir.1995), Flores–Uribe argues that the district court has authority to depart from the offense level after adjusting his criminal history category, and that it should have granted an additional departure based on the minor nature of his prior offense. Unlike the court in *Cuevas–Gomez,* the district court here did not state that it lacked authority to depart on account of U.S.S.G. § 2L1.2(b)(2), which mandates a 16–level upward adjustment for immigration defendants convicted of aggravated felonies. Rather, the district court considered Flores–Uribe's individual circumstances without indicating that it was constrained not to do so by § 2L1.2(b)(2). It carefully reviewed the nature and extent of Flores–Uribe's criminal record and the difficulty of being in a country where Flores–Uribe doesn't speak the language fluently and has trouble finding and keeping employment. It fixed the extent of

downward departure bearing all the circumstances in mind, including the need for a sentence that encourages Flores–Uribe not to enter the country illegally. We are therefore satisfied that the court's refusal to depart further than it did was discretionary, *see United States v. Eaton,* 31 F.3d 789, 794 (9th Cir.1994), and for this reason is unreviewable. *United States v. Brown,* 985 F.2d 478, 480 (9th Cir.1993).

AFFIRMED.