

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-22-1998

# United States v. Marin Castaneda

Precedential or Non-Precedential:

Docket 97-5252

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

Recommended Citation

"United States v. Marin Castaneda" (1998). *1998 Decisions*. Paper 21.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/21

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed January 22, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 97-5252

UNITED STATES OF AMERICA,

v.

GABRIEL JESUS MARIN-CASTANEDA,

Gabriel Jesus Marin Castaneda,

        Appellant.

ON APPEAL FROM THE

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

(D.C. Criminal No. 97-cr-00039)

Submitted Under Third Circuit LAR 34.1(a)

November 21, 1997

BEFORE: SCIRICA and LEWIS, Circuit Judges,
and POLLAK,* District Judge.

(Filed January 22, 1998)

        Tonianne J. Bongiovanni

        Office of Federal Public Defender
        972 Broad Street
        Newark, NJ 07102

         Attorney for Appellant
_____

*Honorable Louis H. Pollak, Senior United States District Judge for the
Eastern District of Pennsylvania, sitting by designation.

Kevin McNulty
Office of United States Attorney
970 Broad Street
Room 502
Newark, NJ 07102

Attorney for Appellee

OPINION OF THE COURT

LEWIS, Circuit Judge.

Gabriel Jesus Marin-Castaneda, a Colombian national, appeals the sentence imposed after he pleaded guilty to importing 1,227 grams of heroin into the United States from Colombia. Marin-Castaneda argues that the district court erred when it decided that it did not have the authority to depart from the applicable sentencing range based on the following factors: (1) Marin-Castaneda's willingness not to oppose deportation; (2) his age; and (3) the deterrent effect of being hospitalized as a result of attempting to smuggle heroin in his stomach. We find no error committed by the district court. Therefore we will affirm the district court's judgment of sentence.

I.

In October 1996, Marin-Castaneda arrived at Newark International Airport aboard a flight from Colombia. During a customs examination, customs officials found a white powdery substance in Marin-Castaneda's shoes which field-tested positive for heroin. After the officials arrested him, Marin-Castaneda informed them that he had also ingested pellets of heroin. The agents then transported him to the Bayonne Medical Center. He remained in the hospital for eleven days, during which time he passed ninety pellets.

Marin-Castaneda pleaded guilty to importing approximately 1,227 grams of heroin into the United States, in violation of 21 U.S.C. SS 952(a) and 960(a)(1), (b)(1). Pursuant to the plea agreement, the base offense level was reduced from 32 to 27. The district court granted

2

an additional two-point downward adjustment, pursuant to U.S.S.G. S 3B1.2(b), because Marin-Castaneda was a minor participant in a larger smuggling scheme. Marin-Castaneda moved for a further two-point reduction, under U.S.S.G. S 5K2.0, based on his willingness to consent to deportation, his age and the deterrent effect of his hospitalization due to ingestion of the pellets. The district court denied this motion. As a result, the total offense level of 25 and Marin-Castaneda's criminal history category of I yielded a sentencing guideline range of 57 to 71 months. The district court sentenced him to a prison term of 57 months, a supervised release term of 5 years and a special assessment of $100. Marin-Castaneda was 67 years old at the time of sentencing. This appeal followed.

II.

The district court had jurisdiction pursuant to 18 U.S.C. S 3231. Generally, we lack jurisdiction "to review a refusal to depart downward `when the district court, knowing it may do so, nonetheless determines that departure is not warranted.' " United States v. Sally, 116 F.3d 76, 78 (3d Cir. 1997) (quoting United States v. McQuilkin, 97 F.3d 723, 729 (3d Cir. 1996), cert. denied, ___ U.S. ___, 117 S. Ct. 2413 (1997)). We do have jurisdiction, however, when a district court refuses to depart downward because it believes it lacks the authority to do so. United States v. Evans, 49 F.3d 109, 111 (3d Cir. 1995). In this case, the district court ruled that it had no authority to grant Marin-Castaneda's motion, so we have jurisdiction pursuant to 18 U.S.C. S 3742 and 28 U.S.C. S 1291.

We review the question of whether a district court had authority to depart downward under an abuse of discretion standard. Sally, 116 F.3d at 78. However, a district court's determination of the scope of its authority is based entirely in law. For this reason, "[l]ittle turns . . . on whether we label review of this particular question abuse of discretion or de novo." Koon v. United States, 116 S. Ct. 2035, 2047 (1996) (citation omitted). "A district court by definition abuses its discretion when it makes an error of law." Id. (citation omitted).

3

III.

Marin-Castaneda argues that the district court had the authority to depart downward based on his willingness to consent to deportation,[1] his age and the ordeal caused by ingestion of the heroin pellets. We will address each of these factors in turn.

A.

Initially, we must observe that Marin-Castaneda does not make any claim that his very status as a deportable alien provided a basis for downward departure. Other courts of appeal have expressed conflicting opinions as to whether a district court can depart downward based on an alien's eligibility for deportation. Compare United States v. Farouil, 124 F.3d 838, 847 (7th Cir. 1997) (holding that a district court may depart if it finds that status as a deportable alien results in an "unusual or exceptional hardship in. . . conditions of confinement"), and United States v. Smith, 27 F.3d 649, 655 (D.C. Cir. 1994) ("[I]f a deportable alien is assigned to a more drastic prison than otherwise solely because his escape would have the extra consequence of defeating his deportation, then the defendant's status as a deportable alien would have clearly generated increased severity and thus might be the proper subject of a departure."), with United States v. Restrepo, 999 F.2d 640, 645-47 (2d Cir. 1993) (concluding that status as a deportable alien is not an appropriate ground for downward departure). However, we need not address this issue because Marin-Castaneda does not argue that his deportability exacerbates his sentence in any way. Rather, he claims that the district court should have considered his decision not to contest deportation as a basis for departure. He supports this claim by noting that: (1) the Attorney General has authorized federal prosecutors to recommend

_____

1. We recognize that Congress has recently acted to replace the term "deportation" with "removal." See Omnibus Appropriations Act of 1997, Pub. L. No. 104-208, div. C, S 308, 1996 U.S.C.C.A.N. (110 Stat.) 3009-620, 3009-621. However, since the term "deportation" appears in most of the relevant case law, we will use that term in this opinion to avoid any potential confusion.

4

downward departures for aliens who accept deportation without resistance; and (2) the Attorney General has the power to deport a convicted alien before completion of a prison term. We do not find that either of these points permits a district court to depart downward when an alien concedes deportation.

In 1995, the Attorney General issued a memorandum to all federal prosecutors stating a policy favoring the "deportation of criminal aliens from the United States as expeditiously as possible." Appendix at 28 (Memorandum from Office of the Attorney General, April 28, 1995). In furtherance of this objective, the Attorney General explained that "prosecutors may agree to recommend a one or two level downward departure from the applicable guideline sentencing range in return for the alien's concession of deportability and agreement to accept a final order of deportation." Id. at 29. Such departures would be made pursuant to U.S.S.G. S 5K2.0. See also 18 U.S.C. S 3553(b) (stating that sentencing court may impose sentence outside applicable guideline range if "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission . . ."). Marin-Castaneda contends that, since the prosecution had the authority to recommend downward departure based on his willingness to be deported, the district court erred in ruling that it could not grant the two-point adjustment.

This argument misses a fundamental point. The prosecution did not recommend downward departure on this basis, but opposed it. The United States Attorney for the District of New Jersey did not have to accept Marin-Castaneda's offer to waive his right to a deportation hearing, and chose to reject it. Since Marin-Castaneda is not a resident alien, but a Colombian national who, for all that appears, set foot on United States soil for the sole purpose of importing heroin, it seems unlikely that he would have had any remotely colorable basis for opposing deportation. At all events, Marin-Castaneda did not at sentencing (and has not here) put forth an arguable objection to deportation that he was willing to waive in exchange for a downward departure. Thus, his waiver of his

5

right to a deportation hearing provides no real administrative advantage. Although we have never addressed this precise issue, we receive guidance from other courts of appeal. In United States v. Clase-Espinal, 115 F.3d 1054, 1055 (1st Cir. 1997), a district court refused to depart downward in sentencing a defendant from the Dominican Republic, even though he consented to deportation, because he had no plausible basis to contest deportation. In affirming the district court, the court of appeals for the First Circuit noted that section 5K2.0 of the Sentencing Guidelines permits a downward departure only when "the proffered ground makes the case sufficiently atypical to remove it from the `heartland.' " Id. at 1057 (quoting Koon, 116 S. Ct. at 2045). With this requirement in mind, the Clase-Espinal court reasoned that "an alien criminal defendant with no plausible basis for contesting deportation . . . does not meet the atypicality requirement for a section 5K2.0 departure simply by relying upon whatever administrative convenience presumably may result from a stipulated deportation." 115 F.3d at 1058 (citation omitted). The court based this conclusion on the fact that "only about 3% of all apprehended aliens who are expelled ever undergo a deportation hearing." Id. at 1058 n.4 (citing Immigration and Naturalization Service, 1993 Statistical Yearbook 158 tbl. 59 (1994)).

Similarly, in United States v. Flores-Uribe, 106 F.3d 1485, 1486 (9th Cir. 1997), a district court denied a defendant's request for a downward departure based on his consent to deportation to Mexico. The district court determined that it had neither the authority to depart downward nor to issue a deportation order absent a request from the United States Attorney. Id. at 1486. The court of appeals for the Ninth Circuit affirmed the district court by holding that (1) under 8 U.S.C. S 1252a(d)(1),2 a district court can only order deportation, as an exception to the Executive Branch's plenary power to deport aliens, at the request of the United States Attorney and (2) absent such a request, the defendant's stipulation to deportation had "no practical or legal effect since the district court lacked jurisdiction to enter a deportation order." Id. at 1487-88.

_____

2. This provision has since been redesignated as 8 U.S.C. S 1252a(c)(1).

We find the reasoning of Clase-Espinal and Flores-Uribe compelling with respect to two points: (1) a defendant without a nonfrivolous defense to deportation presents no basis for downward departure under section 5K2.0 by simply consenting to deportation and (2) in light of the judiciary's limited power with regard to deportation, a district court cannot depart downward on this basis without a request from the United States Attorney. Thus, we conclude that the district court did not err in refusing to depart downward. Such departure was beyond its authority. We note that, even if the prosecution had requested downward departure on this basis, the district court still would have had the discretion not to depart downward. See United States v. Casiano, 113 F.3d 420, 429 (3d Cir. 1997) ("[I]t is the district court's decision, not the prosecutor's, whether to depart and to what extent."); Clase-Espinal, 115 F.3d at 1056 (affirming district court's decision not to depart despite fact that United States Attorney recommended two-level downward departure based on defendant's consent to deportation). The United States Attorney's opposition only militates against downward departure in this case. The recommendation of the United States Attorney, while it may not be sufficient to convince a district court to depart downward on this basis, is at least necessary for such a decision.

Marin-Castaneda makes the supplemental argument that the district court had authority to depart downward because the Attorney General may deport an alien before completion of a prison term. The Attorney General has authority to

> remove an alien . . . before the alien has completed a sentence of imprisonment . . . if the Attorney General determines that (I) the alien is confined pursuant to a final conviction for a nonviolent offense . . . and (II) the removal of the alien is appropriate and in the best interest of the United States.

8 U.S.C. S 1231(a)(4)(B).3 Marin-Castaneda's reliance on

_____

3. Both parties use the citation "8 U.S.C.S 1252(h)(2)(A)" but this provision is presently codified at 8 U.S.C. S 1231(a)(4)(B). See Omnibus Appropriations Act of 1997, Pub. L. No. 104-208, div. C, SS 305-06, 1996 U.S.C.C.A.N. (110 Stat.) 3009-598, 3009-599, 3009-607 (transposing language from 8 U.S.C. S 1252 to 8 U.S.C. S 1231).

this provision is misplaced for two reasons. First, the provision only offers a post-sentence method by which an alien may be deported before fully serving a term of imprisonment. The provision makes no mention of downward departure in imposing the sentence itself. Second, the statute vests the Attorney General, not the district court, with the authority to curtail a prison sentence for the purpose of deportation. As discussed earlier, a district court cannot sua sponte issue a deportation order without a request from the United States Attorney. 8 U.S.C. S 1252a(c)(1). Thus, the district court could not depart downward pursuant to section 1231(a)(4)(B) because the statute does nothing to expand its rather limited powers on issues of deportation. In sum, Marin-Castaneda invokes section 1231(a)(4)(B) at the wrong juncture and directs his argument at the wrong branch of government. In fact, Marin-Castaneda does not even have standing to enforce this statute. See Thye v. United States, 109 F.3d 127, 129 (2d Cir. 1997) (holding that Attorney General's authority to deport "creates no private right of action" for a criminal alien because Attorney General must act in best interest of United States, not the criminal alien). The Attorney General may still exercise her power to deport Marin-Castaneda before he has completed his sentence, but this possibility created no ground for downward departure by the district court when it was imposing the sentence. Consequently, the district court did not err in concluding that it could not depart downward pursuant to 8 U.S.C. S 1231(a)(4)(B).

B.

Marin-Castaneda argues that his age and the ordeal of being hospitalized also served as bases for downward departure. We disagree. First, the Sentencing Commission has instructed that

> [a]ge . . . is not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range. Age may be a reason to impose a sentence below the applicable guideline range when the defendant is elderly and infirm and where a form of

8

> punishment such as home confinement might be equally efficient as and less costly than incarceration.

U.S.S.G. S 5H1.1, policy statement. We have interpreted this language as "foreclos[ing] departures based on age in all but the most extraordinary cases." Sally, 116 F.3d at 78; see also United States v. Monaco, 23 F.3d 793, 798 n.7 (3d Cir. 1994) (concluding that defendant's age of 57 offered no basis for downward departure). Marin-Castaneda does not assert any extraordinary condition other than the fact that he was 67 years old at the time of sentencing. He does not seem to suffer from any unusual impairments for a man his age; certainly nothing suggesting that home confinement would be as effective as incarceration. In fact, he had never been hospitalized before his stay at the Bayonne Medical Center. Appendix at 98 (referring to Presentence Investigation Report P 37). Absent some extraordinary infirmity, we cannot conclude that the bare fact that Marin-Castaneda was 67 years old would have justified a downward departure by the district court. See United States v. Goff, 20 F.3d 918, 921 (8th Cir. 1994) (holding that section 5H1.1 does not permit downward departure for 67-year-old defendant in good health); United States v. Tucker, 986 F.2d 278, 280 (8th Cir. 1994) (same).

Second, with regard to the deterrent effect of Marin-Castaneda's physical ordeal, he has indicated that he was aware of the health risks involved in ingesting heroin prior to his trip. Addendum to Presentence Investigation Report at 14. Thus, the manifest danger in swallowing ninety pellets of heroin did not deter Marin-Castaneda from embarking on this endeavor in the first place. Furthermore, the physical trauma he experienced, which is inherent in smuggling drugs in this manner, could hardly be considered an unusual characteristic or circumstance distinguishing this case "from the `heartland' cases covered by the guidelines." U.S.S.G. S 5K2.0, policy statement; see also Koon, 116 S. Ct. at 2046 ("Before a departure is permitted, certain aspects of the case must be found unusual enough for it to fall outside the heartland of cases . . . ."). In sum, neither Marin-Castaneda's age nor his physical ordeal presented grounds for a downward departure.

IV.

Before the district court, Marin-Castaneda argued that the three proposed bases for downward departure -- consent to deportation, age and physical trauma -- warrant downward departure collectively, even if they may not individually. We find the three bases to be no more compelling collectively than they are individually. Viewed together or separately, these factors do not justify downward departure.

Since the district court did not err in determining the scope of its authority to depart downward, we will affirm its judgment of sentence.

A True Copy:
Teste:

Clerk of the United States Court of Appeals
for the Third Circuit