135 F.3d 844
 UNITED STATES of America, Appellee,
v.
Luis ZAPATA, aka "Lucho", aka 0501, Defendant,
Eddie Correa, aka 424; John Jairo Carbajal, aka 350, aka
"Merlin", aka "Carlos"; Juan Carlos Rave Estrada,
aka "Denin", aka "Jorge", aka "Benny";
Nelson Guzman, Defendants-Appellants.
 Nos. 609, 580, 117 and 210, Dockets 96-1573, 96-1457,
97-1013 and 96-1536.
 United States Court of Appeals,
Second Circuit.
 Argued Dec. 17, 1997.
Decided Jan. 30, 1998.
 
 Gino Josh Singer, New York City, for Defendant-Appellant Eddie Correa.
 Daniel Nobel, New York City, for Defendant-Appellant John Jairo Carbajal.
 John H. Jacobs, CJA Attorney, New York City (Vivian Shevitz, Carol Gette, of Counsel), for Defendant-Appellant Juan Carlos Rave Estrada.
 Howard L. Jacobs, New York City, on the brief, for Defendant-Appellant Nelson Guzman.
 Andrew B. Lachow, New York City, Assistant United States Attorney for the Southern District of New York (Mary Jo White, United States Attorney for the Southern District of New York, Craig A. Stewart, Assistant United States Attorney, of Counsel), for Appellee.
 FEINBERG, McLAUGHLIN and CALABRESI, Circuit Judges.
 FEINBERG, Circuit Judge.
 
 
 1
 Defendants Eddie Correa, John Jairo Carbajal, Juan Carlos Rave Estrada and Nelson Guzman appeal from their conviction in the United States District Court for the Southern District of New York (Miriam Goldman Cedarbaum, Judge) on one count of conspiracy to distribute and possess with the intent to distribute cocaine, in violation of 21 U.S.C. § 846. We have decided most of the issues raised by these appeals in an order filed simultaneously with this opinion. However, we believe that the issue discussed below deserves more detailed discussion.
 
 
 2
 Appellants Carbajal and Estrada contend that they were entitled to a one point downward departure under 18 U.S.C. § 3553 and § 5K2.0 of the United States Sentencing Guidelines based on their willingness to stipulate to deportability and accept deportation. Appellant Correa joins in the arguments of his co-defendants. Judge Cedarbaum assumed that she had the authority to grant such a departure but declined to do so. We affirm.
 
 A. Background
 1. Facts
 
 3
 Correa, Carbajal and Estrada were convicted, following a jury trial, in November 1995. Correa was sentenced on June 27, 1996 to 235 months imprisonment followed by five years of supervised release plus the mandatory $50 special assessment. Carbajal received the same sentence on August 8, 1996. Estrada was sentenced on August 28, 1997 to 324 months imprisonment, five years of supervised release and the special assessment. All three defendants are non-citizens of the United States and are therefore subject to deportation upon completion of their sentences.
 
 2. Consent to Deportation
 
 4
 In order to facilitate deportation of alien felons, in April 1995 the Attorney General of the United States issued a memorandum to federal prosecutors encouraging them to recommend sentence reductions in return for plea agreements that include consent to administrative deportation.
 
 
 5
 A stipulated administrative deportation is predicated on the alien's admission of alienage and deportability. It also requires an alien's waiver of the right to an administrative hearing before an immigration judge, an administrative appeal, and judicial review of the final order of deportation.
 
 
 6
 ...
 
 
 7
 To obtain such stipulations, prosecutors may agree to recommend a one or two level downward departure from the applicable guideline sentencing range in return for an alien's concession of deportability and agreement to accept a final order of deportation. Such downward departure is justified on the basis that it is conduct not contemplated by the guidelines. See U.S.S.G. § 5K2.0.
 
 
 8
 Attorney General's memorandum of April 28, 1995. In response to this, the United States Attorney's Office for the Southern District of New York implemented a policy, on a trial basis, of recommending a one-level downward departure under § 5K2.0 for deportable alien defendants who consent to deportation as part of a plea agreement.
 
 
 9
 Carbajal informed the district court of his willingness to accept a judicial order of deportation both in a May 11, 1996 pro se letter and in a subsequent submission by his attorney. The issue was not raised at Carbajal's August 8, 1996 sentencing hearing, however, and Judge Cedarbaum did not rule on it at that time. Five days later, at Estrada's sentencing hearing, Estrada asked for a downward departure based upon his own willingness to consent to deportation. The judge continued Estrada's sentencing proceedings to consider the issue and, despite concerns over her power to do so, also stayed execution of the judgments against Carbajal and Correa (who had been sentenced over six weeks earlier and apparently never raised the issue himself) in order to consider the appropriateness of the departure for them as well.
 
 
 10
 The government argued below, and reiterates on appeal, that Fed.R.Crim.P. 35(c) did not permit resentencing of Correa or Carbajal. Rule 35(c) provides that a sentencing court "acting within 7 days after the imposition of sentence, may correct a sentence that was imposed as a result of arithmetical, technical, or other clear error." With respect to Correa, the government argued that more than seven days had passed since imposition of his sentence. With respect to Carbajal it argued that the downward departure is not the kind of correction contemplated by the rule, and that although the court "stayed" Carbajal's sentence within seven days, a stay does not extend the seven-day period, which had expired by the time Judge Cedarbaum ruled.
 
 
 11
 Judge Cedarbaum ultimately ruled that she had the power to resentence Carbajal because she had previously failed to rule on his offer to consent to deportation. Because we affirm her decision not to downwardly depart, we need not consider whether this ruling was correct. We find no mention in the record of a ruling with respect to Correa, but it seems clear that Judge Cedarbaum did not believe she had the power to resentence him. Although Correa, in his brief, "adopts the briefs of all co-appellants with respect to any arguments that may apply to him," no appellant (including Correa) argues that Judge Cedarbaum had the power to resentence Correa, and accordingly we will limit our discussion to appellants Carbajal and Estrada.
 
 
 12
 Judge Cedarbaum decided not to award the downward departure to either Carbajal or Estrada because she did not believe consent to deportation was by itself a sufficient mitigating circumstance with respect to either defendant. In order to justify a downward departure, she said, "it has got to be something that mitigates the conduct of the defendant in some fashion that is peculiar to him and that argues for more lenient treatment because of something peculiar to him."
 
 
 13
 On appeal, Estrada and Carbajal argue that it was error for the district judge to look for factors specific to individual defendants and that, despite the policy adopted in the Southern District, the fact that their offers to consent were not part of a plea agreement should also not prevent their receipt of the one-level downward departure.
 
 B. Discussion
 1. Standard of Review
 
 14
 "It is well established in this Circuit that a court's decision not to depart from the Guidelines is normally not appealable. The only exceptions to this rule are ... where the defendant shows that a violation of law occurred, that the Guidelines were misapplied, or that the refusal to depart was based on the sentencing court's mistaken conclusion that it lacked the authority to depart." United States v. Lainez-Leiva, 129 F.3d 89, 93 (2d Cir.1997) (citations omitted). Here, the claim by appellants is that Judge Cedarbaum misapplied the Guidelines by looking for individualized factors, even though the Attorney General's memorandum lays out a generic policy. "We review the district court's interpretation and application of the Sentencing Guidelines de novo." United States v. Spencer, 129 F.3d 246, 252 (2d Cir.1997).
 
 2. Analysis
 
 15
 Estrada and Carbajal argue that, although they asserted their right to a trial and were therefore ineligible for the Southern District's program, the policy recommended in the Attorney General's memorandum need not require a guilty plea as a condition for a downward departure. This policy, appellants argue, benefits the government in two ways. First, it facilitates the deportation of deportable aliens. Second, it deters such aliens from illegally returning to the United States by exposing them to additional punishment. This is accomplished by incorporating the deportation into the conditions of supervised release so that the returning alien can be imprisoned for violating the terms of such release. Appellants point out that neither of these justifications applies with any less force to a defendant who goes to trial, nor are they aimed at individual characteristics or mitigating factors.
 
 
 16
 The government advances several reasons for denying Estrada and Carbajal the downward departure. In addition to the claimed jurisdictional bar described above, the government argues that the departure should be limited to plea agreements, as in the Southern District's policy, because only a plea agreement gives the government the contractual assurance that the defendant will carry out an agreement to waive deportation procedures. The government also argues that a departure for consent to deportation is a form of acceptance of responsibility--the defendant acknowledges that as a result of his crime he can and will be deported--and that because both defendants here went to trial, neither has accepted responsibility. Finally, the government argues that even if the downward departure is available to non-pleading defendants like Estrada and Carbajal, it is a matter for the discretion of the sentencing judge, which was properly exercised here.
 
 
 17
 There is some difference of opinion among the circuit courts as to when consent to deportation may form the basis for a downward departure under § 5K2.0. In United States v. Clase-Espinal, 115 F.3d 1054 (1st Cir.), cert. denied, --- U.S. ----, 118 S.Ct. 384, 139 L.Ed.2d 299 (1997), the First Circuit, fearing the creation of unauthorized "shadow guidelines" by the Attorney General, held that as a matter of law consent to deportation is by itself very rarely sufficient to support a downward departure. Id. at 1057-60. The Eighth Circuit, by contrast, in United States v. Cruz-Ochoa, 85 F.3d 325 (8th Cir.1996), held that the district court had "erred as a matter of law by incorrectly believing that it could not depart downward from the guidelines on the basis of defendant's waiver and consent to administrative deportation...." Id. at 325-26. See also United States v. Hernandez-Reyes, 114 F.3d 800, 802 (8th Cir.1997) (district court's decision not to downwardly depart unreviewable because court "fully understood its authority and decided not to exercise it."). The Ninth Circuit, in United States v. Flores-Uribe, 106 F.3d 1485 (9th Cir.1997), found that the district court lacked the authority to enter a judicial order of deportation without the consent of the government and that defendant's "Stipulation to Deport" thus had no legal effect and could not support a downward departure. Id. at 1488.
 
 
 18
 This circuit has apparently not yet directly addressed the issue. Cf. United States v. Prince, 110 F.3d 921, 926 (2d Cir.), cert. denied, --- U.S. ----, 118 S.Ct. 188, 139 L.Ed.2d 127 (1997) (not ineffective assistance of counsel to fail to raise downward departure for consent to deportation). Cf. also United States v. Restrepo, 999 F.2d 640, 644 (2d Cir.1993). On the district court level, several courts in this circuit have awarded the downward departure when recommended by the prosecution. See e.g., United States v. Balogun, 971 F.Supp. 775 (E.D.N.Y.1997). At least one court has downwardly departed over the government's objection. United States v. Ramnath, 958 F.Supp. 99 (E.D.N.Y.1997). See also, United States v. Santos, 1996 WL 617329 (S.D.N.Y.1996) (government opposed, and court exercised discretion not to award, downward departure to defendant who did not enter into a plea agreement).
 
 
 19
 It is not necessary, at this time, for us to choose between the approaches taken by the decisions discussed above. Nor need we address the government's contentions that departure is warranted only as part of a negotiated plea agreement, or certainly only when the defendant pleads guilty. Judge Cedarbaum assumed that she had the power to grant the downward departure, but denied it in the exercise of her discretion. This would be error if we agreed with appellants that the Attorney General's memorandum establishes a uniform policy which must be applied to all defendants who consent to deportation and that individual mitigating factors are not to be considered. However, we reject this position as an unnecessary and unwarranted restriction on the district court's discretion.
 
 
 20
 The sentences are affirmed.