**UNITED STATES of America**

v.

**Maria DELGADO, Defendant.**

**No. 97 CR 708.**

United States District Court, E.D. New York.

Feb. 19, 1998.

Zachary W. Carter, United States Attorney by Michelle DeLong, Assistant United States Attorney, Brooklyn, NY, for United States.

Todd M. Merer, New York City, for Maria Delgado.

## MEMORANDUM, JUDGMENT, AND ORDER

WEINSTEIN, Senior District Judge.

### I. *Introduction*

People often live lives of silent desperation. Henry David Thoreau, *Walden, or Life in the Woods* 9 (Vintage Books 1991)(1854). This defendant, faced with a desperate situation, resorted to criminal action quite inconsistent with her past life and probable future. Under the circumstances, a downward departure in her sentence is appropriate.

### II. *Facts*

Defendant, born in Cali, Columbia in 1950, was one of six children. Her father was a sanitation worker, her mother sorted coffee beans. The child had only three years of school. She was frequently beaten with a belt and stick by her father.

At sixteen she left her family's home to marry. While defendant was unemployed, had a six month old infant, and another child on the way, her husband was killed in a fishing accident. Emotional counseling was required, but did not fully compensate for her ensuing emotional instability, evidenced in part by her crawling under her bed when visitors came to see her. At the sentencing hearing, defendant was unable to discuss her husband's death of thirty years ago without sobbing.

After becoming a widow, defendant worked at low pay for a short period at a shirt factory. Subsequent employment as a meat counter salesperson continued for over fourteen years. Relying upon her earnings, defendant raised her two daughters and sent them to school. She herself attended night school, earning a professional salesperson's diploma.

In 1992 her employment was terminated as no longer useful to the company. She had to sell her home to pay off her mortgage and bills. Efforts to start a business were unsuccessful. She borrowed at high interest to pay living expenses. Her creditor insisted that only if she went to the United States carrying drugs would her debt be erased. As an added inducement, she was promised $6,000.

Defendant declined. Pressure continued.

Early one morning the creditor telephoned to say that travel arrangements had been made for her to go to the United States. Her flight was leaving at noon and agents were already on the way to take her to the airport. Defendant's protests were ignored.

A man and a woman soon arrived to escort defendant to her plane where she was provided with a ticket to John F. Kennedy International Airport. They took her handbag and substituted a suitcase which had been packed with clothes and some 700 grams of heroin.

Detected by our customs agents at once, she was arrested and pleaded guilty to one count of importation of heroin. 18 U.S.C. § 952(a).

At sentencing, defendant, slight in stature, with no previous brush with the law, was exceptionally anxious and upset. She appeared to be ashamed and genuinely remorseful.

### III. *Guidelines*

The base offense level is 28, decreased by four points because of defendant's minimal role in the offense, U.S.S.G. § 3B1.2(a); three points for her acceptance of responsibility, U.S.S.G. § 3E1.1(b)(2); two points because she met the requirements of the safety valve provisions, 18 U.S.C. § 3553(f), U.S.S.G. 2D1.1(b)(6); and one point based upon her stipulation to uncontested deportation. *Cf. United States v. Zapata*, 135 F.3d 844, 846–47 (2d Cir.1998)(practice in this district, unlike other districts, is to treat a deportation stipulation as an automatic reduction rather than a discretionary departure). Her resulting total offense level of 18, requires between 27 and 33 months of incarceration.

### IV. *Departure*

Placing this defendant with minimal mens rea in prison for the long period suggested by the Guidelines would not serve society well. It is unlikely that this impressed drug courier will commit a crime again. As one commentator noted:

Despite their marginal status in the international drug trade and the desperate personal circumstances of most courier populations studied, drug mules—whether male or female—have been declared Public Enemy Number 1 by almost all national authorities ....

... we should face squarely the likelihood that our drug-war strategies, adopted by many other nations, have so far resulted only in the re-victimization of many people already suffering under grinding poverty and corrupt political regimes.

Tracy Huling, *Women Drug Couriers,* 9 Crim. Just. 14, 60, 62 (Winter 1995).

To the extent that any sentence can deter others, a lesser term of imprisonment will do the job. *Cf. Drug Trafficking in the Americas* ix (Bruce M. Bagley and William O. Walker III, ed.1996)(the economics of drug trafficking); *Women Drug Couriers* 59 (misleading promises to drug couriers); Andrew Von Hirsch, *Doing Justice: The Choice of Punishments* 148–49 (1976)(temptation of the poor).

■ Downward departure is appropriate because the conduct of defendant was aberrational. *See United States v. Schmick,* 21 F.3d 11, 13 (2d Cir.1994)("aberrant conduct" as an alternative ground for downward departure); *United States v. Ritchey,* 949 F.2d 61, 63 (2d Cir.1991)("single act of aberrant behavior" provides "legal authority to depart downward"); *United States v. Delvalle,* 967 F. Supp 781 (E.D.N.Y.1997)(same). "Everything points to the conclusion ... that she stumbled into something, awkwardly, naively, and with insufficient reflection on the seriousness of the crime ...." *United States v. Takai,* 941 F.2d 738, 743 (9th Cir.1991) (departure based upon aberrational behavior). The "spontaneity and thoughtlessness" of defendant's decision to break the law weigh heavily in favor of a reduced sentence. *United States v. Grandmaison,* 77 F.3d 555, 563 (1st Cir.1996).

■ Duress also furnishes a ground for departure. *Cf.* U.S.S.G. § 5K1.12 (coercion or duress ground for downward departure); *United States v. Amor,* 24 F.3d 432, 440 (2d Cir.1994)("causally related chain of circumstances" created duress sufficient for departure); *United States v. Gaviria,* 804 F.Supp. 476, 479 (E.D.N.Y.1992)(history of abuse or dominance or other similar sociological circumstances may support departure from the Guidelines even when the strictures of U.S.S.C. § 5K1.12 have not been met). The "court is not confined to the classical definition of duress, but should properly consider the individual before the court and her particularly vulnerability." *United States v. Johnson,* 956 F.2d 894, 899 (9th Cir.1992); *see also United States v. Mena,* 968 F.Supp. 115, 117 (E.D.N.Y.1997)(departure for vulnerable defendant dominated by older brother and manipulated to take part in criminal scheme).

The fragility of defendant, both physically and emotionally, may also be considered in determining an appropriate departure. Defendant's diminutive size, and lachrymose and meek demeanor will make her life in prison particularly difficult. *See United States v. Lara,* 905 F.2d 599, 605 (2d Cir.1990)("Assaults against vulnerable male or female prisoners make prison life especially dangerous for such individuals."); *United States v. Gonzalez,* 945 F.2d 525, 527 (2d Cir.1991)(downward departure approved where defendant's feminine appearance and demeanor made him vulnerable to attack while incarcerated)

■ Some weight is also given to defendant's exceptionally difficult life. *See United States v. B. Roe,* 976 F.2d 1216, 1219 (9th Cir.1992)(sentence vacated and case remanded for district court to determine whether defendant's history of childhood abuse and neglect warranted reduction in sentence); *United States v. Big Crow,* 898 F.2d 1326 (8th Cir.1990)(Native American defendant's "excellent employment record and his consistent efforts to overcome the adverse environment of the Pine Ridge reservation" allowed downward departure). Added to childhood abuse, this defendant suffered the traumatic loss of her husband at age seventeen, leaving her with two infants. Such an unusual situation was "not adequately taken into consideration by the Sentencing Commission." 18 U.S.C. § 3553(b); *Koon v. United States,* 518 U.S. 81, 116 S.Ct. 2035, 2047, 135 L.Ed.2d

392 (1996)("Before a departure is permitted, certain aspects of the case must be found unusual enough for it to fall outside of the heartland of cases in the Guideline.").

Individually and cumulatively these considerations support a finding that a period of incarceration based upon offense level 18 of the Guidelines is excessive. U.S.S.G. 5K2.0, commentary (combination of characteristics or circumstances make take case out of the Guidelines' "heartland"); *United States v. Broderson,* 67 F.3d 452, 459 (2d Cir.1995)("confluence of circumstances ... not taken into account by the Guidelines" support downward departure).

### V. *Conclusion*

A downward departure of three levels to offense level 15 is appropriate. Defendant is sentenced to a period of incarceration of 18 months and a mandatory special assessment of $100 without a fine. Since defendant will be deported, the five year period of supervised release need not be served in this country.

So ordered.