**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Jose Baltazar RODRIGUEZ–LOPEZ,**
**Defendant–Appellant.**

**No. 98–50674.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 10, 1999

Filed Dec. 20, 1999

---

Roger W. Haines, Assistant United States Attorney, San Diego, California, for the plaintiff-appellee.

Heather M. Angove, Assistant Federal Public Defender, San Diego, California, for the defendant-appellant.

Before: D. W. NELSON, REINHARDT and TROTT, Circuit Judges.

Opinion by Judge REINHARDT; Dissent by Judge TROTT.

REINHARDT, Circuit Judge:

Jose Rodriguez–Lopez was taken into custody by federal immigration agents on February 19, 1998. After he admitted that he had no legal right to be present in the United States, it was discovered that he had three prior criminal convictions and had previously been deported on at least four occasions. On April 9, 1998, Rodriguez–Lopez was charged with violating 8 U.S.C. § 1326 by being an alien present in the United States after deportation, and he pled guilty to this charge on May 11, 1998. There was no plea agreement.

On September 14, 1998, the district court sentenced Rodriguez–Lopez based on an offense level of 8 under U.S.S.G. § 2L1.2(a), an increase of 4 points under U.S.S.G. § 2L1.2(b)(1)(B) (because he had been deported after being convicted of vehicle theft, a felony), and a downward adjustment of 2 levels for acceptance of responsibility. The district court denied two requests for downward departures: one for overrepresentation of his criminal history category, which is not in question here, and the other based on his offer to stipulate to deportation. During the sentencing hearing, Rodriguez–Lopez argued that the stipulation would provide a specific benefit to the government by allowing it to conserve valuable resources. The government in turn opposed his request for a downward departure based on that offer because Rodriguez–Lopez had not pled guilty "early on" pursuant to a "fast track" plea agreement that it offered to some defendants. The court, in response, concluded that it was "forced to deny the deportation departure ... for the reasons stated by the Government." Consequently, Rodriguez–Lopez was sentenced to the low end of the guideline range, under an adjusted offense level of 10 and criminal history category V, to 21 months in prison and three years of supervised release. This appeal followed.

Whether a particular factor is a permissible basis for departure is a question of law to be reviewed de novo. *See United States v. Lipman,* 133 F.3d 726, 729 (9th Cir.1998). Although a discretionary decision not to depart from the Sentencing Guidelines is *not* reviewable on appeal, a denial based on the district court's belief that it lacks legal authority to depart *is* reviewable under a de novo standard. *See United States v. Tucker,* 133 F.3d 1208, 1214 (9th Cir.1998).

In this case, both parties agree that the district court's ruling rested on its belief that it lacked the legal authority to depart downward based on the offer to stipulate to deportation where the government did not consent to the departure through a fast-track plea agreement.[1] This court has jurisdiction to review the district court's conclusion that it lacked the authority to depart on that basis. Because

---

**1.** Although Rodriguez–Lopez argued in his request for downward departures that he should be granted a departure because of the administrative benefit provided by his stipulation, the government opposed his departure request solely on the ground that the stipulation was not part of a fast track plea agreement, and the district court found that it had no authority to consider the stipulation absent the prosecutor's consent. Although the government contends on appeal that a stipulation to deportation is not a permissible basis for a downward departure from the Sentencing Guidelines absent a "non-frivolous, colorable defense to deportation," it did not raise that issue before the sentencing court, and no inquiry was made into whether Rodriguez–Lopez had any such defense.

we hold that, as a matter of law, the district court's conclusion was erroneous, we reverse and remand.

In *Koon v. United States*, 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996), the Supreme Court held that factors that are not mentioned in the U.S. Sentencing Guidelines may be used as grounds for downward departures when they "take the case out of the Guideline's heartland." *Koon*, 518 U.S. at 96, 116 S.Ct. 2035. We recently issued an en banc decision interpreting *Koon* as precluding the creation of additional categories of factors that are deemed inappropriate as a basis for downward departure unless the Sentencing Commission expressly prohibits consideration of those factors.[2] *See United States v. Sanchez–Rodriguez*, 161 F.3d 556, 560 (9th Cir.1998) (en banc) (quoting *United States v. Mendoza*, 121 F.3d 510, 513 (9th Cir.1997)).

■ Whether an unmentioned factor provides a basis for downward departure cannot be decided as a general matter, but instead must be determined on the basis of the facts and circumstances of the particular case.

> The Government seeks to avoid the factual nature of the departure inquiry by describing it as a higher level of generality linked closely to questions of law. The relevant question, however, is not, as the Government says, "whether a particular factor is within the 'heartland'" as a general proposition, but whether the particular factor is within the heartland given all the facts of the case.

*Koon*, 518 U.S. at 99–100, 116 S.Ct. 2035 (citation omitted). We have expressly held that courts should not decide as a general proposition whether a factor is an appro-

priate basis for departure; rather, the sentencing court must determine on a case-specific basis whether a factor provides a basis for departure in light of all the circumstances:

> Whether or not a factor makes a case unusual is a determination particularly suited to the district court, "informed by its vantage point and day-to-day experience in criminal sentencing." ... The district court has an "institutional advantage" in making this assessment, for it "see[s] so many more Guideline cases than we do...." In *Koon*, the Supreme Court specifically held that the determination of whether a factor takes a case outside the heartland is not made "as a general proposition." ... Rather, the sentencing court must consider whether the "particular factor is within the heartland given all the facts of the case."

*Sanchez–Rodriguez*, 161 F.3d at 561 & n. 7 (quoting *Koon*, 518 U.S. at 98, 99–100, 116 S.Ct. 2035) (citations omitted).

■ The government's argument that the district court lacked discretion to grant a downward departure in this case runs contrary to *Sanchez–Rodriguez*'s holding that courts cannot categorically preclude a particular basis for departure unless the Sentencing Commission expressly prohibited consideration of that basis. *See id.* at 560. Both at trial and on appeal, the government argues that a stipulation to deportation should only be considered for departure only if the government has entered into a fast-track plea agreement with the defendant. On appeal, the government also argues that a court does not have discretion to "depart downward from the Sentencing Guidelines based on a defendant's stipulation to deportation, unless the

---

**2.** The Sentencing Commission has made it clear that, with certain specific exceptions such as race, sex, national origin, it "does not intend to limit the kinds of factors, whether or not mentioned anywhere else in the guidelines, that could constitute grounds for departure in an unusual case" *See* U.S.S.G. ch. 1, pt. A, intro. cmt. 4(b). Accordingly, in *San-*

*chez–Rodriguez,* we concluded that even if a specific guideline "linguistically applies" to the defendant's actions, and the basis for the departure is mentioned explicitly elsewhere in the Guidelines, a court may not conclude categorically that that basis cannot take that case out of the Guideline's heartland. *See San-chez–Rodriguez,* 161 F.3d at 561.

Government receives an articulable benefit not contemplated by the Sentencing Guidelines." The government further suggests that it would not receive such a benefit unless the defendant in fact had a "non-frivolous, colorable defense" to deportation.

■ Both the defendant and the government agree that this court has not decided the question whether a downward departure is permissible based on a defendant's stipulation to deportation when (1) the government fails to consent to such a departure and/or (2) the defendant lacks a colorable defense to deportation.[3] With respect to the issue of governmental consent, we conclude that, although consent is relevant to a sentencing court's decision whether to depart from the guidelines, the absence of such consent does not constitute an absolute and categorical bar to departure. As to the second issue-namely, that whether a downward departure is permissible based on an articulable benefit to the government or a colorable, non-frivolous defense to deportation, we decline to reach it both because the government did not raise the issue before the sentencing court, and because, as a result, no inquiry was made into whether Rodriguez–Lopez's stipulation in fact afforded any benefit to the government.[4]

■ Simply put, the law of this circuit clearly proscribes the categorical prohibition of grounds for departure that are not expressly excluded from consideration by the Sentencing Commission. As a result, we must reject the government's argument that a district court may never consider granting a departure on the basis of an alien's stipulation to deportation unless the government has given its consent. To require governmental consent in all such in-

**3.** The defendant argues, and the government concedes, that *United States v. Flores–Uribe*, 106 F.3d 1485 (9th Cir.1997), does not resolve the latter question. In that case, the defendant had offered to stipulate to a *judicial* order of deportation (authorized under 8 U.S.C. § 1252a(d)(1), now 8 U.S.C. § 1252a(c)(1)) but because the United States Attorney had not requested such an order, the district court had no authority to issue one, and thus the offer "had no practical or legal effect." *Id.* at 1488. *Flores–Uribe* does not answer the question whether a stipulation to *administrative* deportation—which clearly has a legal effect, although the parties dispute its practical significance—is a permissible basis for downward departure. As the defendant points out, it is clear that an immigration judge has the authority to order the defendant's deportation. Even if *Flores–Uribe* did control this case, however, the defendant points out that because it was decided before our en banc decision in *Sanchez–Rodriguez*, reexamination of *Flores–Uribe*'s holding might be warranted.

Moreover, our recent decision in *United States v. Martinez–Ramos*, 184 F.3d 1055 (9th Cir.1999), also does not resolve this question. In *Martinez–Ramos*, we held that in the case of a violation of 8 U.S.C. § 1326, deportable status may not be a ground for downward departure from the applicable guideline range. That decision, however, turned on the fact that anyone who violates § 1326 is, almost invariably, deportable. As a result, we concluded that the factor was intrinsic to every conviction under § 1326 and, accordingly, that we were required to assume that the Sentencing Commission necessarily took deportable alien status into account when establishing the Guidelines. Status as a deportable alien, however, is very different from a stipulation to deportation. The latter is not intrinsic to the conviction.

**4.** The government's argument on this issue would, however, seem to suffer from the same problem that besets its position regarding the necessity of its consent. The government urges the court to follow the lead of the First Circuit, which has held that, even with governmental consent, a district court lacks authority to depart based on a defendant's stipulation to deportation, absent a non-frivolous defense to deportation. *See United States v. Clase–Espinal*, 115 F.3d 1054 (1st Cir.1997), *cert. denied*, 522 U.S. 957, 118 S.Ct. 384, 139 L.Ed.2d 299 (1997). Reliance upon the First Circuit's decision in *Clase–Espinal* is problematic because its reasoning would seem to conflict with that of *Koon* and *Sanchez–Rodriguez*; rather than examining whether the facts of the particular case took it outside of the heartland, as is required in this circuit, the First Circuit analyzed whether the factor itself, as a general matter, fell within the heartland of cases. *See Clase–Espinal*, 115 F.3d at 1057–58; *see also Koon*, 518 U.S. at 99–100, 116 S.Ct. 2035; *Sanchez–Rodriguez*, 161 F.3d at 561 & n. 7.

stances runs contrary to both Ninth Circuit precedent and the plain language of U.S.S.G. § 5K2.0, which affords the district court discretion to depart on the basis of factors not adequately taken into account by the Sentencing Commission. To hold that government consent is a mandatory condition in cases other than those in which government consent is explicitly required by the Guidelines (as it is, for example, in departures for substantial assistance), not only runs afoul of *Sanchez–Rodriguez*, but also of the Guidelines themselves, by impermissibly shifting the locus of discretionary decisionmaking from the district judge to the prosecution.[5] Finally, we note that in holding that government consent is *not* a mandatory condition in § 1326 departure cases, we reach the same decision as did the Second Circuit in *United States v. Galvez–Falconi*, 174 F.3d 255, 260 (2nd Cir.1999) (downward departure for a stipulated deportation permissible in certain circumstances even over government objections).

Because the absence of government consent does not preclude departures on the basis of a stipulated deportation in all instances, the district court should have examined the facts and circumstances of Rodriguez–Lopez's case and determined whether, given those facts and circumstances, his stipulation took the case out of the heartland. *See Sanchez–Rodriguez*, 161 F.3d at 561. On remand, the district court will have to examine that question and may, of course, consider the absence of government consent.

■ On this appeal, because it is not possible to determine that the district court's belief that it lacked discretion to depart "did not affect the district court's selection of the sentence imposed," *Mendo-*

za, 121 F.3d at 513–14 (quoting *Williams v. United States*, 503 U.S. 193, 203, 112 S.Ct. 1112, 117 L.Ed.2d 341 (1992)), we hold that the error was not harmless and remand for the sole purpose of allowing the district court to exercise its discretion with respect to the requested downward departure.

REVERSED and REMANDED.

TROTT, Circuit Judge, dissenting:

I respectfully dissent. In my judgment, willingness to accept deportation in the absence of a colorable, nonfrivolous defense to deportation is not outside the heartland. There is nothing atypical whatsoever about the usual alien convicted under section 1326 not having a defense to deportation and being willing to be deported, nothing. In this respect, I agree with the First and Third Circuits' opinions in *United States v. Clase–Espinal*, 115 F.3d 1054, 1059 (1st Cir.1997), and *United States v. Marin–Castaneda*, 134 F.3d 551, 555 (3d Cir.1998). Thus, *United States v. Sanchez–Rodriguez*, 161 F.3d 556 (9th Cir. 1998), which was wrongly decided, *see id.* at 564–69 (Trott, J., dissenting), is irrelevant.

This remand is not only based on faulty law, but is for no useful purpose because, based on his criminal history and numerous deportations, Rodriguez–Lopez clearly has no colorable defense.

---

5. Moreover, if this court were to accept the government's reasoning, then any time the government wanted to urge the prohibition of a basis for departure, it could simply define the category more broadly and insist that the narrower prohibition was permissible. (For example, the government could concede that the nature of a prior felony conviction can be a valid basis for departure, but argue that when the prior felony involves a child as a victim then the departure is always impermissible). The government's argument would simply transfer too much authority over downward departures from the district court to the prosecution.