[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
08/16/99
THOMAS  K. KAHN
CLERK

No. 97-4274
Non-Argument Calendar

_____

D. C. Docket No. 96-762-CR-LCN

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WESLEY WASHINGTON MIGNOTT,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(August 16, 1999)**

Before COX and MARCUS, Circuit Judges, and FAY, Senior Circuit Judge.

PER CURIAM:

Wesley Washington Mignott appeals his 135-month sentence for conspiracy to possess with intent to distribute cocaine while on board a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. § 1903(j). Although Mignott does not raise the issue, the government points out that the district court's deportation order is invalid because the court no longer has jurisdiction to make such an order.

On appeal, Mignott argues that this Court can review the sentencing court's denial of his departure request based on his offer not to contest deportation because the sentencing court determined that it had no discretion to depart on such ground. He contends that the district court erred in its denial because it did in fact have the discretion to base a departure on his willingness to be deported.

Although we generally do not review the merits of a district court's refusal to grant a downward departure, we may conduct a de novo review of a defendant's claim that the district court mistakenly believed it lacked the authority to grant such a departure. United States v. Holden, 61 F.3d 858, 860 (11th Cir. 1995).

Upon consideration of the plea agreement, sentencing hearing transcript, and presentence investigation report, and upon consideration of the parties' briefs and relevant law, we affirm the district court's denial of a downward departure, but we vacate that portion of the district court's judgment ordering deportation.

The facts are not in dispute. Mignott pled guilty to the charge against him, which was based on the events surrounding his arrest in international waters 161 miles northeast of the Colombian coast. After a U.S. Navy helicopter spotted a vessel traveling northwest at a high rate of speed, a U.S. Navy ship changed course to intercept the vessel. Upon seeing the naval ship, the captain of the vessel increased its speed and headed south, while the crew dumped overboard packages containing 229.5 kilograms of cocaine. Mignott was one of the crew members of the vessel.

At sentencing, Mignott requested a departure based on his willingness to submit to deportation without a hearing. He argued that his cooperation would relieve the government of burdensome deportation hearings. The sentencing court denied his request, stating that "although I can order immediate deportation upon completion of the defendant's sentence, it's not grounds for departure, in my view." The court sentenced Mignott to 135 months' imprisonment. The court also ordered that Mignott be deported upon his release from prison.

On appeal, Mignott argues that this Court can review the sentencing court's denial of his departure request based on his offer not to contest deportation because the sentencing court determined that it had no discretion to depart on such ground. He contends that the district court erred in its denial because it did in fact have the discretion to base a departure on his willingness to be deported.

3

The government responds that this Court should not review the district court's decision because the court knew it had discretion to depart, but declined to do so in Mignott's case. Alternatively, the government also argues that, even if the district court did not understand its discretion, Mignott has not shown that his case is outside the heartland because he has not proffered any nonfrivolous defenses to deportation.

Although this Court generally may not review the merits of a district court's refusal to grant a downward departure, it may conduct a de novo review of a defendant's claim that the district court mistakenly believed it lacked the authority to grant such a departure. United States v. Holden, 61 F.3d 858, 860 (11th Cir. 1995). Here, the district court's statement that, although it could "order immediate deportation upon completion of the defendant's sentence, it's not grounds for departure, in my view." While it appears to us that the sentencing judge knew he had the authority to depart but that the ground argued did not support the request, this reading of the statement is not without doubt. Therefore, we will consider the merits of the arguments presented. United States v. Webb, 139 F.3d 1390,1395 (11th Cir. 1998).

Under 18 U.S.C. § 3553(b), the sentencing court may impose a sentence outside the range established by the applicable guideline, if the court finds that a mitigating circumstance exists of a kind, or to a degree, not adequately taken into consideration by the sentencing commission. See id.; U.S.S.G. § 5K2.0, p.s. Also, absent a guideline or commentary directly addressing a proffered ground for departure,

4

sentencing courts must determine whether the proffered ground makes the case sufficiently atypical to remove it from the heartland of cases in which the ground is present. United States v. Koon, 518 U.S.81, 96, 116 S.Ct. 2035, 2045, 135 L.Ed.2d 392 (1996); United States v. Lewis, 115 F.3d 1531, 1538 (11th Cir. 1997), cert. denied, 118 S.Ct. 733 (1998).

Whether a defendant's consent to deportation constitutes a mitigating circumstance of a kind not taken into consideration by the sentencing commission is a question of first impression in this Circuit. In United States v. Clase-Espinal, 115 F.3d 1054, 1060 (1st Cir.), cert. denied, 118 S.Ct. 384 (1997), the First Circuit determined that it need not decide the issue of whether a stipulation of deportability may ever be an adequate ground for a § 5K2.0 downward departure. There, the court found that a defendant convicted of unlawful re-entry subsequent to an aggravated-felony conviction, in violation of 8 U.S.C. § 1326(a), was not eligible for a § 5K2.0 departure because the Sentencing Commission was fully aware that all defendants convicted under such provision would be subject to deportation and that many would stipulate to departure. Accordingly, because the defendant had not shown a colorable, nonfrivolous defense to deportation, no mitigating circumstances existed of a kind not adequately considered by the Commission. Clase-Espinal, 115 F.3d at 1059. Moreover, the court determined that the defendant's stipulated deportation did not constitute mitigation to a degree not contemplated by the Commission because an

5

alien without a nonfrivolous defense who stipulates to deportation does not demonstrate a substantial atypicality. Id.

The Second and Ninth Circuits have adopted the approach of the First Circuit, requiring a showing of a nonfrivolous defense, as has the Third Circuit with an additional requirement that the government recommend such departure. See United States v. Galvez-Falconi, 174 F.3d 255 (2d Cir. 1999) (a defendant seeking a § 5K2.0 departure must present a colorable, nonfrivolous defense to deportation, such that the act of consenting to deportation carries with it unusual assistance in the administration of justice); United States v. Marin-Castaneda, 134 F.3d 551, 555-56 (3d Cir.) ("a defendant [convicted of importing heroin] without a nonfrivolous defense to deportation presents no basis for downward departure by simply consenting to deportation), cert. denied, 118 S.Ct. 1855 (1998); United States v. Flores-Uribe, 106 F.3d 1485, 1486 (9th Cir.1997) (defendant convicted of unlawful re-entry not eligible for departure because the district court had no ability to order deportation, and, therefore, the stipulation had no practical effect). On the other hand, the Eighth Circuit, without discussion, has found that consent to deportation constitutes a proper basis for downward departure when the parties have filed a joint motion requesting it. United States v. Cruz-Ochoa, 85 F.3d 325, 325 (8th Cir. 1996); see also, United States v. Hernandez-Reyes, 114 F.3d 800, 802 (8th Cir. 1997) ("The district court here

6

had the authority to depart downward on the basis that [the defendant] consented to an administrative deportation").

We agree with the position taken by the First, Second, Third and Ninth Circuits. Requiring defendants to proffer a nonfrivolous defense to deportation before recognizing consent to deportation as a ground for departure appears sound. Otherwise, a defendant's consent to a deportation against which he has no apparent defense would be a meaningless concession that fails to remove him from the heartland of other alien criminal defendants facing deportation. Moreover, although all of the cases, except for Marin-Castaneda, involve defendants convicted of immigration offenses, rather than drug defendants, such distinction appears to make no difference to whether the Sentencing Commission considered this ground for departure. It seems unlikely that, in fashioning the guidelines for drug importation, the Commission did not consider that some defendants would be aliens who might stipulate to deportation.

Here, Mignott has made no suggestion that he has any defense to deportation, arguing only that he would save the government the expense of a hearing. The value of any stipulation, however, should be considered de minimis from the standpoint of relieving the government's administrative burden because Mignott has no discernible defense to deportation. See Clase-Espinal, 115 F.3d at 1059. As a result, the district court did not have the authority to grant Mignott a downward departure because

7

Mignott showed neither a mitigating circumstance not adequately considered by the Sentencing Commission nor that his case was outside the heartland of cases in which an alien faces deportation. We affirm the ruling of the district court.

The government notes that the district court no longer has the authority to order deportation and states that this Court should vacate the deportation order and remand the case so that the district court may determine whether Mignott should be surrendered to the Immigration and Naturalization Service for deportation proceedings.

On April 1, 1997, the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRAIRA") took effect, and provides that a hearing before an immigration judge is the exclusive procedure for determining whether an alien may be deported from the United States. See 8 U.S.C. § 1229(a)(3). This Court has held that this legislation eliminated any jurisdiction that district courts had to order deportation and that the IIRAIRA applies to all cases pending on appeal as of the date of decision, September 10, 1997. United States v. Alborola-Rodriguez, 153 F.3d 1269, 1272 (11th Cir. 1998), cert. denied, 119 S.Ct. 1809 (1999); United States v. Romeo, 122 F.3d 941, 943-944 (11th Cir. 1997).

Because the district court lacked jurisdiction to order Mignott deported, we vacate the portion of the district court's judgment ordering deportation and remand for further proceedings consistent with Romeo. On remand, the district court may either

delete the deportation order or modify it to provide that Mignott, upon completion of his term of imprisonment, shall be turned over to the Immigration and Naturalization Service for appropriate proceedings under the Illegal Immigration Reform and Immigrant Responsibility Act of 1996. Because either action on remand will operate in Mignott's favor, the district court need not hold a new sentencing hearing. See Fed.R.Crim.P. 32.1(b); see also 18 U.S.C. § 3583(e).

**AFFIRMED IN PART, VACATED AND REMANDED IN PART.**