# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-1789

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Jesus Ramirez-Marquez, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: February 12, 2004
Filed: July 8, 2004

_____

Before MORRIS SHEPPARD ARNOLD, JOHN R. GIBSON, and RILEY, Circuit
Judges.

_____

RILEY, Circuit Judge.

The Government appeals the district court's sentencing decision to grant a downward departure to Jesus Ramirez-Marquez (Ramirez-Marquez) for not contesting deportation. For the reasons discussed below, we reverse the district court, vacate the sentence, and remand for resentencing consistent with this opinion.

## I.    BACKGROUND

Ramirez-Marquez, an alien from Mexico, pled guilty to possession with intent to distribute in excess of 500 grams of cocaine. At sentencing, the district court

determined the applicable range under the United States Sentencing Guidelines (Guidelines) was 37 to 46 months. At that time, Ramirez-Marquez moved for a downward departure for his willingness to waive his rights to resist deportation, relying on United States v. Jauregui, 314 F.3d 961 (8th Cir. 2003). Ramirez-Marquez did not provide notice he was going to make such a motion. In response to the newly raised motion, the Government voiced its opposition to the departure:

> Your Honor, I've had the opportunity, [] just within the last 15 minutes, to look at [Jauregui], and also the motion. The only thing I would point out to the Court is that the defendant in [Jauregui] was a resident alien, having more due process rights than Mr. Ramirez-Marquez. The government [] objects, or we indicate to the Court it does not believe that Mr. Ramirez-Marquez should be entitled to departure for those grounds [i.e., for his willingness to waive deportation rights].

In considering Ramirez-Marquez's motion for a downward departure, the district court pondered the applicability of Jauregui given Ramirez-Marquez's immigration status:

> It is clear that as a resident alien, and the Eighth Circuit recognized it, that person being a landed immigrant, has more substantial rights. . . . While [Ramirez-Marquez] may not be a resident alien, he is an alien, and under those circumstances has certain INS hearing rights. I will consider that to a minor extent, but the Eighth Circuit did make clear that [a downward departure] was reserved for landed immigrants as opposed to illegals.

The district court also recognized Ramirez-Marquez's limited immigration rights:

> You come to the United States, are present in violation of the law, and then when you're here you violate the law again. Not a good thing to do. You have asked for consideration for the fact that you will go back voluntarily to Mexico. You didn't have very many rights in the first

-2-

place because you were not here legally. . . . The net result [is] you have lost your right to come back at all.

Notwithstanding its questioning of Ramirez-Marquez's entitlement to a downward departure and its recognizing Ramirez-Marquez had limited deportation rights, the district court granted a downward departure "from the guideline range by 6 months because of [Ramirez-Marquez]'s willingness not to contest his deportation proceedings, in accord with [Jauregui]." The district court then sentenced Ramirez-Marquez to 31 months imprisonment. The district court did not discuss the evidence upon which it relied in granting Ramirez-Marquez a downward departure for his willingness not to contest deportation. The district court also did not discuss any other Eighth Circuit authority besides Jauregui.

On appeal, the Government argues the district court's sentence requires reversal because a downward departure is not available to an illegal alien convicted of a felony based on the alien's willingness to waive his minimal rights to contest deportation. The Government contends the district court was required to find Ramirez-Marquez waived a nonfrivolous defense to deportation before granting a downward departure. Ramirez-Marquez contends the district court's downward departure faithfully followed Eight Circuit precedent.

## II. DISCUSSION
### A. Standard of Review
Before discussing the merits of the downward departure issue, we address the disputed standard of review. The Government contends we must review de novo the district court's decision to grant the downward departure. Ramirez-Marquez contends the Government failed to raise the issue confronting our court, such that we must employ a plain error standard of review. Ramirez-Marquez lodged a single objection to the Presentence Investigation Report, which did not mention a request for a downward departure based on a waiver of contesting deportation. Instead, at the

sentencing hearing, for the first time and without notice, Ramirez-Marquez, citing Jauregui, moved for a downward departure. After briefly reviewing Jauregui, the Government argued the case did not assist Ramirez-Marquez with his downward departure motion. In its brief response, the Government specifically distinguished Ramirez-Marquez, an illegal alien, from the defendant in Jauregui, a legal resident alien. We conclude the Government preserved the issue for appeal.

Even though we reject a plain error standard of review, we still must determine the appropriate standard of review because, during the pendency of this appeal, Congress modified the standard for reviewing departures from the Guidelines. See Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act of 2003 (PROTECT Act), Pub. L. No. 108-21, § 401(d), 117 Stat. 650, 670 (2003) (amending 18 U.S.C. § 3742(e)). While the Government maintains our standard of review is de novo, Ramirez-Marquez contends the standard of review cannot be de novo because Congress does not have the power to change the standard of review for cases pending review. Although the district court sentenced Ramirez-Marquez before the PROTECT Act became law, our circuit has already held the PROTECT Act's de novo standard of review applies to pending appeals. See United States v. Gonzales-Ortega, 346 F.3d 800, 802 (8th Cir. 2003). Thus, under the newly enacted PROTECT Act, we review de novo a departure decision, inter alia, "based on a factor that–(i) does not advance the objectives set forth in [18 U.S.C. §] 3553(a)(2); or (ii) is not authorized under section 3553(b); or (iii) is not justified by the facts of the case." 18 U.S.C. § 3742(e)(3)(B).

### B. Downward Departure

District courts may depart from the Guidelines generally when "the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." Id. § 3553(b)(1); see U.S.S.G. § 5K2.0 (2002); Koon v. United States, 518 U.S. 81, 98

(1996) ("Before a departure is permitted, certain aspects of the case must be found unusual enough for it to fall outside the heartland of cases in the Guideline."). The district court departed downward based on Ramirez-Marquez's willingness not to contest his deportation proceedings. Ramirez-Marquez contends that, because he gave up his rights to contest deportation, including his right to contest his status as an illegal alien, the district court correctly granted the downward departure.

The Government essentially contends Ramirez-Marquez gave up nothing to receive the downward departure. Quoting 8 U.S.C. § 1228(c), the Government argues Ramirez-Marquez is "conclusively presumed to be deportable from the United States" because he is "[a]n alien convicted of an aggravated felony." Classifying Ramirez-Marquez as an illegal alien convicted of a controlled substance violation, the Government contends Ramirez-Marquez is subject to expedited removal proceedings. See 8 U.S.C. §§ 1227(a)(2)(B)(i), 1228(b). In response, Ramirez-Marquez argues his legal status, i.e., whether he is a citizen, resident alien, or illegal alien, "is a question of law that no court has yet settled, and [his] willingness to accept [a classification as an illegal alien] is precisely what he offered in support of the challenged departure."

Ramirez-Marquez argues settled Eighth Circuit law supports the district court's downward departure decision. We disagree. Our circuit law does not establish a right to a downward departure for any alien who is willing to give up any rights he may have to contest deportation. Instead, circuit caselaw simply recognizes the general availability of a downward departure in cases involving an alien willing to waive his right to an administrative deportation proceeding. See, e.g., Jauregui, 314 F.3d at 963-64 (holding a district court has the discretion to depart downward when a resident alien forfeits substantial rights by waiving an administrative deportation hearing, which substantially assists the administration of justice); United States v. Sera, 267 F.3d 872, 873-75 (8th Cir. 2001) (holding trial counsel's failure to move for a downward departure for a deportable alien's willingness to waive resistance to

-5-

deportation did not constitute ineffective assistance of counsel); United States v. Ramirez-Bernal, 187 F.3d 644, 1999 WL 475565, at *1-3 (8th Cir.1999) (unpublished table decision) (remanding case for resentencing because district court denied motion for a downward departure by alien "lawfully living and working in the United States" because the Government did not join the motion, a factor unmentioned in the Guidelines); United States v. Hernandez-Reyes, 114 F.3d 800, 803 (8th Cir. 1997) (holding district court's denial of the Government's motion for a downward departure for an alien agreeing to an administrative order of deportation was unreviewable, because the district court understood its authority to depart downward); United States v. Cruz-Ochoa, 85 F.3d 325, 325-26 (8th Cir. 1996) (holding "the district court erred as a matter of law by incorrectly believing that it could not depart downward from the guidelines on the basis of defendant's waiver and consent to administrative deportation upon the filing of a joint motion by the parties"). Even in Jauregui, 314 F.3d at 963-64, the case upon which Ramirez-Marquez and the district court relied for the downward departure, our circuit discussed a heightened standard for granting a motion for downward departure based on an alien's willingness to waive deportation rights. Expounding on Jauregui, we now clarify the standard to be applied in cases involving a request for a downward departure based on a willingness to waive deportation rights.

We hold a defendant seeking a downward departure for waiving deportation rights must demonstrate a colorable, non-frivolous defense to deportation and show a waiver of that defense would substantially assist the administration of justice. Other circuits have already adopted a similar standard. See, e.g., United States v. Sentamu, 212 F.3d 127, 137 (2d Cir. 2000); United States v. Mignott, 184 F.3d 1288, 1291 (11th Cir. 1999); United States v. Marin-Castaneda, 134 F.3d 551, 555 (3d Cir. 1998). Indeed, our circuit has come close to expressing this standard, but has not expounded on its reasoning. In Jauregui, "a lawful permanent resident of the United States" was convicted of possession with intent to distribute methamphetamine. Jauregui, 314 F.3d at 962. The permanent resident alien sought a downward departure for waiving

his right to an administrative deportation hearing, and the district court granted a four-level departure. Id. Affirming the district court's sentence, we held "a waiver of the administrative deportation proceeding due a resident alien is a sufficient basis for departure." Id. at 963-64. The court's rationale was a resident alien gives "up substantial rights in waiving an administrative deportation hearing," which "substantially assist[s] in the administration of justice." Id. at 964.

We conclude the standard we clarify today is required for two main reasons. First, this standard will assure downward departures will only be granted in atypical, rather than routine, cases. Second, this standard will reduce unwarranted disparities in sentencing convicted aliens in our circuit.

Exercising its authority to write the Guidelines, the Sentencing Commission (Commission) specifically discussed its vision of limited use of departures. See U.S.S.G. ch. 1, pt. A, § 4(b) (2002).[1] The Commission made clear departures only apply to atypical cases, and departures on grounds not mentioned in the Guidelines "will be highly infrequent." Id.; see Koon, 518 U.S. at 96 (stating "[t]he court must bear in mind the Commission's expectation that departures based on grounds not mentioned in the Guidelines will be 'highly infrequent'"). If standardless departures were the rule, i.e., district courts could grant departures to any defendant willing to waive any deportation rights, then departures would no longer be granted in atypical cases or on a highly infrequent basis. See Sentamu, 212 F.3d at 138 ("If all defendants who stipulate to deportation were routinely rewarded with downward departures, then departures would, inappropriately, become the rule rather than the exception."). We also fear frequent, standardless application of downward departures in cases involving aliens might constructively amend the Guidelines without input

---

[1]In 2003, the Commission transferred the original introduction to the Guidelines to an editorial footnote, which is where the cited material now resides. See U.S.S.G. § 1A1.1, cmt. n.1 (ed. note) (2003).

from the Commission. See, e.g., U.S.S.G. § 5K2.0, cmt. n.3(A)(ii) (2003) (stating that, because "the Commission has continued to monitor and refine the guidelines since their inception to take into consideration relevant circumstances in sentencing, it is expected that departures based on such unidentified circumstances will occur rarely and only in exceptional cases"). Finally, if a defendant attempts to waive deportation rights, but really does not forfeit any rights or assist the administration of justice, we do not consider the defendant's "waiver" as being atypical from any other criminal case involving an alien facing deportation. See Mignott, 184 F.3d at 1291 (recognizing "a defendant's consent to a deportation against which he has no apparent defense would be a meaningless concession that fails to remove him from the heartland of other alien criminal defendants facing deportation"). For these reasons, the standard we enunciate today should further the Commission's goal of preserving departures for atypical cases.

The Guidelines also seek to reduce unwarranted disparities in sentencing similarly situated defendants. U.S.S.G. ch. 1, pt. A, § 3 (2002) (stating "Congress sought reasonable uniformity in sentencing by narrowing the wide disparity in sentences imposed for similar criminal offenses committed by similar offenders"). Without a workable standard, each defendant seeking a downward departure would rely on the particular views of each sentencing judge, which may result in variant sentences for similarly situated aliens. See Sentamu, 212 F.3d at 138 ("If such variations were to occur, the ruling that such departures are in general permissible, unrelated to particular characteristics of the individual defendant or to any special feature of his case, would have undermined the goal of reducing unwarranted disparities in the sentences of similarly situated defendants."). For example, two defendants with identical alien status could commit identical crimes in different districts and both seek downward departures for waiving deportation rights. Without a consistent standard to apply, the sentencing courts may not agree on whether to grant a downward departure. Recognizing district courts routinely confront convicted aliens with varying immigration status, the standard we enunciate today should

further Congress's goal of avoiding unwanted and unwarranted sentencing disparities for similarly situated aliens.

The district court in Ramirez-Marquez's case did not discuss the standard it applied or the evidence upon which it relied in deciding to grant a downward departure. Instead, the district court seemed willing to grant Ramirez-Marquez a downward departure regardless of what deportation rights Ramirez-Marquez waived. Reviewing the record de novo, including the Presentence Investigation Report and the sentencing transcript,[2] we are unable to conclude Ramirez-Marquez has (1) demonstrated a colorable, non-frivolous defense to deportation or (2) shown a waiver of that defense would substantially assist the administration of justice. Given Ramirez-Marquez's reliance on Jauregui, which specifically discussed a heightened standard for a downward departure, Ramirez-Marquez had ample opportunity to present his downward departure request to the district court, but waited until the last minute at sentencing to request the departure. Consequently, we are provided no evidence to support the district court's decision to grant Ramirez-Marquez a downward departure.

Finally, we do not intend to transform sentencing proceedings into immigration hearings. Simply granting downward departures without considering precisely what rights the defendant is waiving serves no purpose other than to shorten that particular defendant's sentence. Therefore, requiring defendants seeking downward departures for waiving deportation rights to demonstrate a colorable, non-frivolous defense to deportation and show a waiver of that defense would substantially assist the

_____

[2]We have also reviewed Ramirez-Marquez's brief on appeal, searching for evidence of what deportation rights Ramirez-Marquez waived to receive a downward departure. Ramirez-Marquez apparently takes the position that he is entitled to a downward departure, regardless of the evidence presented or what deportation rights he waived. That is not the law.

administration of justice should protect similarly situated alien defendants and assure departures will be a highly infrequent occurrence in only atypical cases.

## III.  CONCLUSION

For the reasons discussed, we reverse the district court's downward departure decision, vacate the sentence, and remand for resentencing.

_____