[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-10473
Non-Argument Calendar
_____

D.C. Docket No. 2:14-cr-00046-WCO-JCF-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MARTIN IGLESIAS-CRUZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(October 6, 2015)

Before HULL, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

After pleading guilty, Martin Iglesias-Cruz appeals his 40-month sentence for illegal reentry into the United States after previously being deported, in violation of 8 U.S.C. § 1326(a), (b)(2).  On appeal, Iglesias-Cruz argues that his 40-month sentence, three months above the advisory guidelines range of 30 to 37 months, is procedurally unreasonable because the district court miscalculated his advisory guidelines range and is also substantively unreasonable.  After review, we affirm.

## I.  BACKGROUND FACTS

### A.    Two Prior Deportations and 1995 Drug Conviction

In 1989, Defendant Iglesias-Cruz, who is a citizen of El Salvador, illegally entered the United States.  After his asylum application was denied, Iglesias-Cruz failed to report for voluntary departure and was ordered deported in 1990.

In 1994, Iglesias-Cruz was arrested in Washington, D.C. during an undercover drug operation.  Stemming from that arrest, in 1995, Iglesias-Cruz was convicted of two counts of a felony drug trafficking offense in the U.S. District Court for the District of Columbia.[1]  The district court imposed concurrent 12-

---

[1]The presentence investigation report ("PSI") stated at one point that Iglesias-Cruz was convicted of two counts of unlawful distribution of cocaine base and at another point that Iglesias-Cruz was convicted of two counts of unlawful possession of cocaine within 1000 feet of a school.  On appeal, the government states that the judgment of conviction indicates that the convictions were for cocaine distribution.  We need not resolve this issue because neither party disputes that Iglesias-Cruz's 1995 cocaine offenses, whatever their precise nature, qualified as felony "drug trafficking offenses" within the meaning of U.S.S.G. § 2L1.2(b)(1)(B).

month sentences, followed by six years of supervised release.  After his release, Iglesias-Cruz was deported on November 22, 1995.

In May 1997, Iglesias-Cruz again was arrested in Washington, D.C, which brought him to the attention of immigration officials.  In December 1997, Iglesias-Cruz pled guilty to illegal reentry of a deported alien and received a 40-month sentence.  In addition, Iglesias-Cruz's supervised release as to his 1995 cocaine convictions was revoked, and he was ordered to serve a 10-month sentence consecutive to his 40-month sentence for the illegal reentry conviction.  On March 16, 2001, Iglesias-Cruz was released and deported for the second time.

## B.    Indictment and Guilty Plea

On August 2, 2014, Iglesias-Cruz was stopped and arrested in Georgia for vehicle-related offenses.  After he pled guilty in state court to driving with a suspended license, Iglesias-Cruz was sentenced to 12 months' probation on that charge, and served 10 days in jail before being transferred to Immigration and Customs Enforcement ("ICE") custody.

Iglesias-Cruz was held in ICE custody for 41 days before he was indicted for the instant federal offense.[2]  Iglesias-Cruz was charged with, and pled guilty to,

---

[2]Although the parties and the PSI agreed that Iglesias-Cruz was held in ICE custody for 41 days, the PSI also stated that Igelsias-Cruz was transferred to ICE custody on August 21, 2014 and indicted on September 23, 2014, which is in fact 33 days.

3

being found in the United States on or about August 2, 2014, after having been deported.

## C.    Presentence Investigation Report

Iglesias-Cruz's presentence investigation report ("PSI") calculated a base offense level of 8, pursuant to U.S.S.G. § 2L1.2(a).  The PSI recommended a 12-level increase, pursuant to U.S.S.G. § 2L1.2(b)(1)(B), because (1) Iglesias-Cruz had been deported in November 1995 after his May 1995 convictions for drug trafficking offenses, and (2) his May 1995 convictions were assigned three criminal history points.  The PSI applied a 3-level reduction for acceptance of responsibility, yielding a total offense level of 17.

The PSI assigned Iglesias-Cruz a total of six criminal history points, 3 criminal history points for his 1997 illegal reentry conviction and 3 criminal history points for his 1995 cocaine convictions.  The PSI explained that the 1995 cocaine convictions received 3 points, pursuant to U.S.S.G. §§ 4A1.1(a) and 4A1.2(k)(1), because although Iglesias-Cruz's original prison term was for 12 months, he served an additional 10 months in prison after his supervised release was revoked, for a total of 22 months.

The six criminal history points resulted in a criminal history category of III.  A total offense level of 17 and criminal history category of III yielded an advisory guidelines range of 30 to 37 months.

**D.      Objections and Request for Downward Departures**

Iglesias-Cruz objected to the 3 criminal history points the PSI assigned to his 1995 cocaine convictions and consequently to the 12-level increase under U.S.S.G. § 2L1.2(b)(1)(B), which applied only if the 1995 cocaine convictions received the 3 criminal history points.  Iglesias-Cruz relied upon recently amended commentary to U.S.S.G. § 2L1.2, which defined the term "sentence imposed" to include only those revocation sentences imposed before deportation.  See U.S.S.G. § 2L1.2 cmt. n.1(B)(vii).  Although Iglesias-Cruz acknowledged that the amended definition explicitly applied only to § 2L1.2's offense-level calculation, he contended that the amendment's rationale should extend to the scoring of a defendant's criminal history under § 4A1.2 as well.

According to Iglesias-Cruz, if his 1995 cocaine convictions did not receive 3 criminal history points, his criminal history category would be II rather than III and his offense level would be increased by 8-levels, rather than by 12-levels, resulting in an adjusted offense level of 13, rather than 17.  Thus, Iglesias-Cruz argued that his correctly calculated advisory guidelines range was 15 to 21 months, rather than 30 to 37 months.

Alternatively, Iglesias-Cruz argued that the district court should depart downward, pursuant to Application Note 7 to § 2L1.2, because his adjusted offense level overrepresented the seriousness of his 1995 cocaine convictions and, pursuant

to § 4A1.3(b)(1), because a criminal history category III overrepresented the seriousness of his criminal history.  Iglesias-Cruz asked the district court to depart downward to the advisory guidelines range of 15 to 21 months he said would apply if his 1995 convictions did not received 3 criminal history points.  Iglesias-Cruz asked for a further downward departure, pursuant to Application Note 8 to § 2L1.2, to account for the time he was held in ICE custody before his indictment.

E.    Sentencing

At sentencing, the district court overruled Iglesias-Cruz's objections, denied his requests for a downward departure, and adopted the PSI.  The district court found that the advisory guidelines range was 30 to 37 months.

Iglesias-Cruz requested a downward variance, pointing out that: (1) he had a difficult childhood in El Salvador, where he was forced to fight as a child soldier in the civil war; (2) he committed his last non-immigration offense 18 years ago; (3) since his release from prison in 2001, he married, started a family and worked as a house painter to support his children; and (4) he returned to the United States only to care for his family.

The district court stated that the guidelines range was not going to be "a controlling factor in [its] ultimate determination."  Instead, the district court pointed out that deterrence was "an important factor to consider here," Iglesias-Cruz was already deported multiple times, and his previous 40-month sentence for

his 1997 illegal reentry offense had not deterred him from returning to the United States. The district court also noted that, based on the ages of his U.S.-born children, Iglesias-Cruz returned to the United States "very shortly after he had been deported the last time." The district court admired "those who have the work ethic to come here to work" and was "very hesitant to criticize those who come to support their families and to work," but stressed that in Iglesias-Cruz's case it was "in violation of the law." The court said it was "giving rather great weight to the fact that a [prior] 40-month sentence didn't deter [Iglesias-Cruz] last time." The district court imposed a 40-month sentence, stating it was "certainly . . . not going to go below that when it's a repeat of the previous offense."

Iglesias-Cruz reiterated his request for a downward departure for the time he spent in ICE custody awaiting transfer to the custody of the U.S. Marshals. The district court stated, "I generally do that. That's a factor I've taken into consideration, but under the circumstances as to the sentence I imposed, I'll leave the determination of what credit this defendant is to receive" to the Bureau of Prisons. When Iglesias-Cruz stressed that the Bureau of Prisons would not credit him for this time, the district court responded that it understood that fact.

## II.  PROCEDURAL REASONABLENESS

Although the Sentencing Guidelines are now advisory after United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005), the district court still must calculate

7

the advisory guidelines range correctly.  United States v. Pugh, 515 F.3d 1179, 1190 (11th Cir. 2008).  A sentence based on a miscalculated advisory guidelines range is procedurally unreasonable.  See Gall v. United States, 552 U.S. 38, 51, 128 S. Ct. 586, 597 (2007).[3]

Iglesias-Cruz contends his sentence is procedurally unreasonable because the district court erred in applying the 12-level enhancement under U.S.S.G § 2L1.2 and in assigning 3 criminal history points to his 1995 drug convictions.[4] We first review the applicable guidelines used to calculate Iglesias-Cruz's offense level and criminal history score and then address his particular claims.

## A.    Offense Level Under § 2L1.2 After a Drug Trafficking Conviction

Under § 2L1.2, an illegal reentry defendant begins with a base offense level of 8.  U.S.S.G. § 2L1.2(a).  If the defendant was previously deported after a felony drug trafficking conviction, his offense level is increased, but the extent of the increase depends upon two things: (1) the length of the sentence imposed for the

---

[3]We review the reasonableness of a sentence under the deferential abuse of discretion standard.  Pugh, 515 F.3d at 1190.  We review the sentencing court's application of the Sentencing Guidelines de novo and its factual findings for clear error.  United States v. Dougherty, 754 F.3d 1353, 1358 (11th Cir. 2014), cert. denied, 135 S. Ct. 1186 (2015).  We review de novo the sentencing court's interpretation of a provision of the Sentencing Guidelines. Id.

[4]Iglesias-Cruz also argues that his sentence is procedurally unreasonable because the district court denied his request for a downward departure under Application Notes 7 and 8 of U.S.S.G. § 2L1.2 and under U.S.S.G. § 4A1.3(b)(1).  We lack jurisdiction to review the merits of these departure claims, however, because it is apparent from the record that the district court understood it had the authority to depart downward on each ground, but declined to do so in Iglesias-Cruz's case.  See United States v. Mignott, 184 F.3d 1288, 1289 (11th Cir. 1999). Accordingly, to the extent Iglesias-Crus seeks review of these rulings, we dismiss his appeal.

prior drug trafficking conviction; and (2) whether the conviction receives criminal history points.  Id. § 2L1.2(b)(1)(A)-(B).

Specifically, § 2L1.2(b) provides that if a defendant was previously deported after a drug trafficking conviction, and "the sentence imposed exceeded 13 months" for that conviction, a 16-level increase applies if that conviction receives criminal history points; and a 12-level increase applies if it does not.  U.S.S.G. § 2L1.2(b)(1)(A).  If "the sentence imposed was 13 months or less," for that prior conviction, a 12-level increase applies if that conviction receives criminal history points, and an 8-level increase applies if it does not.[5]

The commentary to § 2L1.2 explains that the phrase "sentence imposed" has the same meaning as the phrase "sentence of imprisonment" in U.S.S.G. § 4A1.2(b) and Application Note 2 (used to compute a defendant's criminal history score), "without regard to the date of the conviction."  See U.S.S.G. § 2L1.2 cmt. n.1(B)(vii).  In 2012, the Sentencing Commission amended the definition of the

---

[5]Section 2L1.2(b)(1) provides in part:

If the defendant previously was deported, or unlawfully remained in the United States, after—

(A)    a conviction for a felony that is (i) a drug trafficking offense for which the sentence imposed exceeded 13 months . . . increase by **16** levels if the conviction receives criminal history points under Chapter 4 or by **12** levels if the conviction does not receive criminal history points;

(B)    a conviction for a felony drug trafficking offense for which the sentence imposed was 13 months or less, increase by **12** levels if the conviction receives criminal history points under Chapter Four or by **8** levels if the conviction does not receive criminal history points.

U.S.S.G. § 2L1.2(b)(1)(A)-(B) (emphasis added).

"sentence imposed" in § 2L1.2's commentary to clarify that "the length of the sentence imposed" includes "any term of imprisonment given upon revocation of probation, parole, or supervised release, but only if the revocation occurred before the defendant was deported . . . ."  Id. (emphasis added); see also U.S.S.G. app. C, amend. 764.[6]  Thus, when counting the length of the "sentence imposed," post-deportation revocation sentences of imprisonment are not counted.

On appeal, Iglesias-Cruz does not dispute that his 1995 cocaine convictions were "drug trafficking offenses" within the meaning of § 2L1.2(b)(1) and that the "sentence imposed"—that is, his original 12-month concurrent sentences without reference to his later 10-month revocation sentence—was for "13 months or less." Iglesias-Cruz disputes only whether his 1995 cocaine convictions properly received criminal history points under Chapter Four, the final requirement for the 12-level increase to apply.  For the foregoing reasons, we conclude that they did.

## B.    Criminal History Points for a Prior Drug Trafficking Conviction

Under Chapter Four, three points are added to a defendant's criminal history score "for each prior sentence of imprisonment exceeding one year and one month."  U.S.S.G. § 4A1.1(a).  Otherwise, only two points are added "for each

---

[6]The purpose of the amendment was to address a circuit split as to whether a revocation sentence imposed after deportation should be counted when determining whether a sentence exceeded 13 months and the 16-level increase applied.  See U.S.S.G. app. C, amend. 764 (Reason for Amendment).

prior sentence of imprisonment of at least sixty days" and one point is added for all other prior sentences of imprisonment. U.S.S.G. § 4A1.1(b), (c).

In turn, a "sentence of imprisonment" is defined as "a sentence of incarceration and refers to the maximum sentence imposed." U.S.S.G. § 4A1.2(b). The commentary explains that although the defendant "must have actually served a period of imprisonment," the "length of a sentence of imprisonment is the stated maximum" and "criminal history points are based on the sentence pronounced, not the length of time actually served." U.S.S.G. § 4A1.2 cmt. n.2.

Important to this appeal and for purposes of calculating criminal history points, any additional term of imprisonment imposed because of a prior revocation of probation, parole, or supervised release is added to the original term of imprisonment, and the sum is used to compute the defendant's criminal history points under § 4A1.1. U.S.S.G. § 4A1.2(k)(1); see also U.S.S.G. § 4A1.2 cmt. n.11 (explaining that the original sentence and the revocation sentence are added together and "the total should be counted as if it were one sentence"). If, however, a sentence was imposed more than 15 years before the commencement of the charged offense, it is not included in the criminal history score unless the sentence, "whenever imposed," resulted in the defendant being incarcerated during any part of the 15-year period. See U.S.S.G. § 4A1.2(e)(1).

With this background about criminal history points, we conclude that under the plain language of § 4A1.2, Iglesias-Cruz's "sentence of imprisonment" for his 1995 cocaine convictions was 22 months.  Although his original sentence in 1995 was for 12 months, Iglesias-Cruz received an additional 10-month sentence in 1997 when his supervised release was revoked.  Moreover, Iglesias-Cruz did not finish serving his 10-month revocation sentence until March 2001, because he was ordered to serve it consecutive to his 40-month sentence for his 1997 illegal reentry conviction.  Therefore, Iglesias-Cruz's incarceration for the 1995 cocaine convictions extended into the 15-year period before the August 2, 2014 commencement of his charged offense.  See U.S.S.G. § 4A1.2(e)(1), (k)(1).

Put simply, for purposes of computing the number of criminal history points, this additional 10-month prison term is added to the original 12-month prison term, for a total of 22 months' imprisonment.  See U.S.S.G. § 4A1.2(k).  Given that Iglesias-Cruz's "sentence of imprisonment" for his 1995 cocaine convictions exceeded one year and one month, the district court properly added three criminal history points, pursuant to § 4A1.1(a).  And, because Iglesias-Cruz's 1995 cocaine convictions received criminal history points under Chapter 4, the district court also properly increased Iglesias-Cruz's offense level by 12 levels, pursuant to U.S.S.G. § 2L1.2(b)(1)(B).

## C.    Iglesias-Cruz's Policy Argument

Iglesias-Cruz argues that the Sentencing Commission, in amending the commentary to § 2L1.2, "expressly prohibit[ed] the increase of a defendant's offense level for a post-deportation supervised release revocation," and that "the Commission would also oppose the increase of Mr. Iglesias-Cruz's offense level due to him receiving criminal history points for a post-deportation supervised release revocation."  Iglesias-Cruz contends the district court "ignored the expressed intent of the Sentencing Commission" by assessing those three criminal history points and imposing the 12-level increase.

Because the plain language of §§ 4A1.1(a) and 4A1.2 is clear and expressly addresses criminal history points, this Court need look no further to determine the meaning of these two guideline provisions.  See United States v. Campa, 529 F.3d 980, 1012 (11th Cir. 2008) (explaining that to determine the meaning of a guideline, this Court first looks to the plain language, and where there is no ambiguity, further inquiry is not needed).  Section 4A1.2 explicitly requires all revocation sentences, without regard to when they were imposed, to be added to the original sentence when computing criminal history points under § 4A1.1(a), (b) and (c).  See U.S.S.G. § 4A1.2(k)(1) & cmt. n.11 (explaining that § 4A1.2(k) "covers revocations of probation and other conditional sentences where the

13

original term of imprisonment imposed, if any, did not exceed one year and one month).  This ends the matter.

Even if we were to inquire further, however, the definition of the "sentence imposed" in the commentary to § 2L1.2 applies only to U.S.S.G. § 2L1.2(b)(1), not to §§ 4A1.1 or 4A1.2.  See U.S.S.G. § 2L1.2 cmt. n.1(B) (providing that the definitions are "[f]or purposes of subsection (b)(1)").  Contrary to Iglesias-Cruz's assertion, Amendment 764, which amended the definition of "sentence imposed," did not expressly prohibit increasing a defendant's offense level based on a post-deportation revocation sentence.  In fact, the amended language of Amendment 764 does not refer to offense levels at all.  Instead, Amendment 764 excluded post-deportation revocation sentences from "the length of the sentence imposed," which in turn determines whether a 16-level increase applies.  See U.S.S.G. § 2L1.2 cmt. n.1(B)(vii) (emphasis added); Id. app. C, amend. 764.  Amendment 764 said nothing about criminal history points, which determines whether a 12-level increase applies, or about the meaning of the phrase "sentence of imprisonment" found in § 4A1.1 and defined in § 4A1.2.  In short, Amendment 764 applies only to 16-level increases, not to 12-level increases.

Had the Sentencing Commission intended to exclude post-deportation revocation sentences from criminal history scoring, and thus from counting toward 12-level increases, it easily could have done so.  Yet, no such exclusion appears in

14

Chapter 4.  Rather, § 4A1.2 explicitly requires revocation sentences to be added in calculating criminal history points.

In light of all of the above, we can glean no intent on the part of the Sentencing Commission to exclude post-deportation revocation sentences when computing criminal history points under §§ 4A1.1 and 4A1.2 or when determining whether to impose a 12-level increase under § 2L1.2(b)(1).  Accordingly, Iglesias-Cruz has not shown that his sentence is procedurally unreasonable.

## III.  SUBSTANTIVE REASONABLENESS

In choosing the appropriate sentence, the district court must consider the 18 U.S.C. § 3553(a) factors, but need not address each factor separately on the record.[7]  United States v. Scott, 426 F.3d 1324, 1329 (11th Cir. 2005).  The weight to be given any § 3553(a) factor is committed to the sound discretion of the district court.  United States v. Clay, 483 F.3d 739, 743 (11th Cir. 2007).  If the district court decides to impose an upward variance, the court "must 'consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'"  United States v. Williams, 526 F.3d 1312,

---

[7]The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwarranted sentencing disparities; and (10) the need to provide restitution to victims.  18 U.S.C. § 3553(a).

15

1322 (11th Cir. 2008) (quoting Gall, 552 U.S. at 50, 128 S. Ct. at 597).  The party challenging the sentence bears the burden of showing that it is unreasonable. Pugh, 515 F.3d at 1189.

We examine whether a sentence is substantively unreasonable in light of the § 3553(a) factors and the totality of the circumstances.  Id. at 1190.  In reviewing the reasonableness of a variance from the advisory guidelines range, we take into account the district court's justification and the extent of the variance, but we do not require extraordinary circumstances to justify such a sentence or presume that such a sentence is unreasonable.  Gall, 552 U.S. at 47, 128 S. Ct. at 594-95.  "We must give 'due deference' to the district court's 'decision that the § 3553(a) factors, on a whole, justify the extent of the variance.'"  United States v. Hayes, 762 F.3d 1300, 1307 (11th Cir. 2014) (quoting Gall, 552 U.S. at 51, 128 S. Ct. at 169) (alteration omitted).  We will vacate such a sentence "only if we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case."  United States v. Shaw, 560 F.3d 1230, 1238 (11th Cir. 2009) (quotation marks omitted).

Here, the district court imposed a 40-month sentence, three months above the advisory guidelines range of 30 to 37 months.  The district court explained that a sentence below 40 months would not provide adequate deterrence.  Iglesias-Cruz

16

had already been deported two times and, after each deportation, he returned to the United States. Moreover, Iglesias-Cruz had already reentered the United States after being convicted in federal district court of illegal reentry and serving a 40-month sentence. The district court's reason for imposing a three-month upward variance is sufficiently compelling to justify the extent of the variance and is supported by the record.

There is no merit to Iglesias-Cruz's claim that the district court failed to consider his difficult life history or the fact that he had returned to the United States to care for his family. The district court heard Iglesias-Cruz's mitigation arguments, and even acknowledged some of the mitigating circumstances explicitly. As the district court explained, however, the court attached great weight to the need for deterrence, which outweighed the mitigating factors Iglesias-Cruz emphasized. See United States v. Cubero, 754 F.3d 888, 892 (11th Cir.), cert. denied, ___ U.S. ___, 135 S. Ct. 764 (2014) (explaining that the district court may attach great weight to one factor over others). Iglesias-Cruz's argument essentially asks us to reweigh the § 3553(a) factors, which we do not do. See Clay, 483 F.3d at 743. Under the particular circumstances of this case with two prior deportations and a prior 40-month sentence, we cannot say the district court's decision to vary upward by three months was an abuse of discretion.

**AFFIRMED.**