[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-13702
Non-Argument Calendar

_____

D.C. Docket No. 4:15-cr-00023-WTM-GRS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CHRISTOPHER A. EDGECOMBE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(March 28, 2016)

Before HULL, JORDAN and JULIE CARNES, Circuit Judges.

PER CURIAM:

After pleading guilty, Christopher Edgecombe appeals his 70-month sentence for theft of a firearm from a firearms dealer, in violation of 18 U.S.C. § 922(u).  On appeal, Edgecombe argues that the district court procedurally erred by: (1) applying U.S.S.G. § 2K2.1(a)(4)(B) to calculate his base offense level; (2) assigning criminal history points to two uncounseled convictions; (3) denying his request for a downward departure under U.S.S.G. § 4A1.3(b)(1); and (4) failing to consider all of the 18 U.S.C. § 3553(a) factors.  Edgecombe also argues that his 70-month sentence is substantively unreasonable.  After review, we affirm in part and dismiss in part.

"We review the reasonableness of a sentence for an abuse of discretion using a two-step process."  United States v. Cubero, 754 F.3d 888, 892 (11th Cir. 2014) (quotation marks omitted).  We look first at whether the sentencing court committed any significant procedural error, such as misapplying the guidelines or treating them as mandatory, failing to consider the § 3553(a) sentencing factors, choosing a sentence based on clearly erroneous facts, or failing to adequately explain the sentence imposed.  Id.[1]

---

[1]The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwarranted sentencing disparities; and (10) the need to provide restitution to victims.  18 U.S.C. § 3553(a).

2

Second, we examine whether the sentence is substantively unreasonable in light of the § 3553(a) factors and the totality of the circumstances.  Id.  The party challenging the sentence bears the burden to show it is unreasonable.  United States v. Alvarado, 808 F.3d 474, 496 (11th Cir. 2015).  The weight given to any particular § 3553(a) factor is within the district court's discretion, and this Court will not substitute its judgment for that of the district court.  Id.  We will reverse a sentence only if we are "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case."  United States v. Pugh, 515 F.3d 1179, 1191 (11th Cir. 2008) (quotation marks omitted).

With respect to procedural reasonableness, the district court did not err in calculating Edgecombe's base offense level under § 2K2.1(a)(4)(B).  Section 2K2.1(a)(4)(B) sets a defendant's base offense level at 20 if, inter alia, the defendant was a "prohibited person" at the time the defendant committed the offense and "the offense involved a . . . semiautomatic firearm that is capable of accepting a large capacity magazine."  See U.S.S.G. § 2K2.1(a)(4)(B)(i)(I), (ii)(I).  The commentary to § 2K2.1 defines a "prohibited person" as "any person described in 18 U.S.C. § 922(g)," which includes a person who has been convicted of a felony.  See id. § 2K2.1 cmt. n.3; 18 U.S.C. § 922(g)(1).  Under the

commentary, a firearm "is capable of accepting a large capacity magazine" if it "has the ability to fire many rounds without reloading because at the time of the offense" the firearm had either attached to it or in close proximity "a magazine or similar device that could accept more than 15 rounds of ammunition." Id. § 2K2.1 cmt. n.2.

The undisputed facts in Edgecombe's presentence investigation report ("PSI") show that: (1) Edgecombe is a convicted felon prohibited from possessing firearms; (2) he sold firearms from the gun range where he worked to another gun dealer for cash; and (3) he then voided the sales and pocketed the proceeds. Edgecombe sold 83 firearms valued at a total of $37,640.58 in this manner. At least one of those firearms was a rifle that "included a firearm magazine with a 30-round firearm ammunition capacity." Multiple firearms Edgecombe sold were pistols that "involved high capacity magazines capable of accepting over 15 rounds of ammunition."

Edgecombe offers no authority to support his argument that his firearm sales must have been made in connection with a violent crime or to another prohibited person. Further, Edgecombe's argument is inconsistent with a plain reading of § 2K2.1(a)(4)(B), which contains no such limitations. As the government noted, other guidelines provisions come into play when a defendant's possession of a

4

firearm with a large capacity magazine was in connection with either a crime of violence or another criminal offense.  See U.S.S.G. §§ 2K2.1(c)(1)(A); 5K2.17.

The district court also did not err in assigning one criminal history point each to Edgecombe's 2003 uncounseled state convictions for sheltering an unmarried minor and driving on a suspended license.  It is undisputed that Edgecombe pled guilty to these two offenses only after he "waived counsel."  In fact, the PSI addendum, adopted by the district court, states that for each 2003 conviction, Edgecombe executed a plea agreement in which he stated that he understood he was "giving up [his] right to have a lawyer advise and represent [him] and to have a free lawyer represent [him] if [he] cannot afford to hire one." The PSI addendum further states that the federal probation officer (who prepared the PSI) gave copies of the above state court documents to counsel for both parties in this federal case.

In contrast, Edgecombe did not present any evidence that either waiver of counsel was not knowing and voluntary.  See United States v. Jackson, 57 F.3d 1012, 1018-19 (11th Cir. 1995) (explaining that at sentencing the defendant has the burden to assert sufficient facts showing that a prior conviction is void because it was obtained without a knowing and voluntary waiver of counsel).  Accordingly, the district court did not err in assigning one criminal history point to each 2003

conviction for purposes of computing Edgecombe's criminal history category of III.

Edgecombe alternatively contends the district court should have granted his request for a downward departure under U.S.S.G. § 4A1.3(b)(1) because his resulting criminal history category of III overrepresented the seriousness of his criminal history. We lack jurisdiction to review the merits of this departure claim. See United States v. Mignott, 184 F.3d 1288, 1289 (11th Cir. 1999) (explaining that this Court lacks jurisdiction to review the denial of a request for a downward departure except to the extent the district court mistakenly believed it lacked authority to grant such a departure). Thus, to the extent Edgecombe challenges the denial of his departure request on the merits, we dismiss his appeal.

The record belies Edgecombe's claim that the district court failed to consider all of the § 3553(a) factors. In imposing Edgecombe's sentence, the district court expressly stated that it had considered the § 3553(a) factors, which was sufficient. See United States v. Sanchez, 586 F.3d 918, 936 (11th Cir. 2009) (explaining that a district court need not discuss each of the § 3553(a) factors individually, as its acknowledgement on the record that it has considered the factors is enough).

Edgecombe contends the district court failed to consider the § 3553(a)(6) factor, the need to avoid unwarranted sentence disparities among similar defendants. The fact that the district court did not explicitly refer to this factor

does not mean the district court did not consider it.  See United States v. Amedeo, 487 F.3d 823, 833 (11th Cir. 2007) (explaining that the fact that the district court did not mention the defendant's mitigating evidence does not mean the district court did not consider it in determining the defendant's sentence).  This is particularly true given that at sentencing Edgecombe did not point to any unwarranted sentence disparities with similar defendants.  See Sanchez, 586 F.3d at 936.

As to substantive reasonableness, Edgecombe argues that the facts of his case warranted a downward variance.  Specifically, Edgecombe argues that some of his prior convictions were "for driving infractions over ten (10) years ago" and that the record does not show he is likely to reoffend.

After considering the parties' arguments, the PSI, the PSI addendum, and the § 3553(a) factors, the district court found that the facts of Edgecombe's case were "the kind contemplated by the Sentencing Commission" and imposed a 70-month sentence, within his advisory guidelines range of 70 to 87 months' imprisonment. That Edgecombe's 70-month sentence fell at the low end of his advisory guidelines range and more than four years below the ten-year statutory maximum sentence in 18 U.S.C. § 924(i)(1), are indications of substantive reasonableness.  See United States v. Gonzalez, 550 F.3d 1319, 1324 (11th Cir. 2008) (noting fact that the sentence imposed fell well below the statutory maximum was a sign of

reasonableness); <u>United States v. Hunt</u>, 526 F.3d 739, 746 (11th Cir. 2008) (explaining that we ordinarily expect a sentence inside the advisory guidelines range to be reasonable).

Moreover, the facts do not leave us with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors and arriving at a sentence at the low end of the advisory guidelines range. Edgecombe, a convicted felon who was prohibited from possessing firearms, obtained a job at a gun range. In order to do so, Edgecombe forged and produced a counterfeit firearms license to circumvent a criminal background check. Then, over a five-month period, Edgecombe stole at least 83 firearms with a total value of over $37,000 from his employer by selling them for cash to one of his employer's competitors at cost and voiding the sales transactions so that it appeared to the employer that the sales had not taken place. Under the circumstances, the district court's refusal to vary downward was not an abuse of discretion.

**AFFIRMED IN PART AND DISMISSED IN PART.**